BUHLER ET AL., RESPONDENTS, *v.* LOFTUS ET AL.,
APPELLANTS.

(No. 3,770.)

(Submitted April 21, 1917. Decided May 26, 1917.)

[165 Pac. 601.]

*Equity — Cancellation of Instruments — Fraud — Complaint—*
*Sufficiency—Amendments—Reply—Evidence — Presumptions*
*—Non-negotiable Instruments.*

Equity—Complaint—Sufficiency—Appeal and Error.
1.  Where the sufficiency of the complaint in an equity case was
not tested by special demurrer, the only objection made to it being
presented on the introduction of evidence, the supreme court on
appeal will confine its inquiry to the question whether the pleading
states sufficient facts to warrant the relief demanded.

Same—Cancellation of Instruments—Fraud—Complaint.
2.  In order to make out a case of fraud, the complaint must allege
that the defendant made a representation intending that the plain-
tiff should act upon it; that the representation was false; that
plaintiff believed it, and that he acted upon it to his damage.

Same—Expression of Opinion—Future Events—Complaint.
3.  Generally, a mere expression of opinion, however erroneous, a
misrepresentation as to what will be done in the future, or a state-
ment of intention, will not warrant cancellation of a contract for
fraud.

Same.
4.  A misrepresentation with reference to the future, but so related
to present conditions that its affirmation will constitute fraud, is
sufficient cause for cancellation of the resultant contract.

Same—Complaint—Sufficiency.
5.  Whatever is necessarily implied in or is reasonably to be in-
ferred from an allegation is to be taken as directly averred.

Same—Fraud—Complaint.
6.  False representation that an investment company would be·
ready for business within two months, made to induce the sale of
stock was a fraud, within the meaning of section 4978, Revised
Codes.

Same—Complaint—Remedy at Law—Pleading—Conclusions.
7.  An allegation in plaintiff's complaint specifically stating that
he had no adequate remedy at law, *held* unnecessary; the question
whether the case presented was one of equitable cognizance depend-
ing upon the averments upon which demand for relief was
predicated, not upon the conclusion of law drawn from them by the
pleader.

[As to cancellation of instruments notwithstanding a defense at
law, see note in 9 Am. St. Rep. 859.]

Same—Offer to Return Consideration—Complaint.
8.  Where the complaint seeking cancellation of a mortgage and
notes offered to return the stock in purchase of which they were

given, it was a sufficient allegation of an offer to restore the consideration.

Same—Complaint—Amendment During Trial—Discretion.

9. Where defendants made no showing that they were surprised by an amendment of the complaint made during the course of trial, or were not ready or able to produce all the evidence they desired, they were not in position to allege abuse of discretion on the part of the trial court in permitting the amendment to be made.

Evidence—Letter—Authentication.

10. Where letters offered in evidence were not shown to have been signed by their purported authors or identified as genuine, they were inadmissible for any purpose.

Same—Evidence—Partial Judicial Record from Other States—Inadmissibility.

11. The admission of fragments of a judicial record from another state in evidence, neither disclosing the issues made by the pleadings nor tending to show what was adjudicated by the final judgment, was error.

Same—Pleading and Practice—Reply.

12. The office of a reply is to join issue on or avoid new matter alleged in answer; it cannot aid the complaint by supplying an omission broadening its scope or adding a new ground of relief; hence the admission of evidence in support of such objectionable averments was error.

Same—Findings—Presumptions—Incompetent Evidence.

13. The presumption obtains that the trial court in making its findings in an equity case, after argument by counsel, considered only so much of the evidence as was competent and substantially material, rejecting such as ought to have been rejected.

Same—Non-negotiable Instruments.

14. Where a note and a mortgage securing it were transferred by assignment, the payee indorsing the note without recourse, the transferee took it with full knowledge that it was a mortgage note, collectible under section 6861, Revised Codes,—a non-negotiable instrument subject to all the equities existing in favor of the maker.

*Appeal from District Court, Flathead County; T. A. Thompson, Judge.*

Suit to cancel mortgage and notes by A. J. Buhler and another against W. J. Loftus and others. Decree for plaintiffs and defendants Loftus appeal. Affirmed.

*Mr. C. W. Pomeroy,* for Appellants, submitted a brief and argued the cause orally.

As applicable not only to the question of the insufficiency of the amended complaint but to the case on its merits, it may be stated as a general principle that courts of equity are slow to grant relief in cases of this character. (*Oppenheimer* v. *Clunie,*

142 Cal. 313, 75 Pac. 899; *Bretthauer* v. *Foley*, 15 Cal. App. 19, 113 Pac. 356.) Statements made which are mere matters of opinion or relate to what is to happen in the future, even though such statements may turn out to be false, are not sufficient to secure the cancellation of a contract secured by such representations. (8 Thompson on Corporations, sec. 4145; *Henry* v. *Continental Building & Loan Assn.*, 156 Cal. 667, 105 Pac. 961; *Ott* v. *Pace*, 43 Mont. 82, 115 Pac. 37; *Butte Hardware Co.* v. *Knox*, 28 Mont. 111, 72 Pac. 301.)

There is no allegation in the amended complaint of the want of an adequate remedy at law. (16 Cyc. 235; Pomeroy's Equity Jurisprudence, 221, 911, 914, 1377.) Even after the amendment, the amended complaint does not show that the plaintiffs had placed the defendants *in statu quo*. (Sec. 5065, Rev. Codes; *Post* v. *Liberty*, 45 Mont. 1, 121 Pac. 475; 16 Cyc. 235.)

Plaintiffs by their conduct have precluded their recovery. (2 Pomeroy's Equity Jurisprudence, 749, 817, 897, 917; *Cross* v. *Mayo*, 167 Cal. 594, 140 Pac. 283; *Oppenheimer* v. *Clunie*, 142 Cal. 313, 75 Pac. 899.) A subscriber to the capital stock of a corporation whose subscription was induced by fraud was held to have ratified the same after discovering the fraud by giving a proxy and permitting the shares to be voted. (1 Thompson on Corporations, 750.) Plaintiffs having transferred a one-third interest in the loan contract to F. H. McDermott, cannot recover. (6 Cyc. 310, 311.)

Furthermore, courts of equity will not grant relief in cases of this character against a *bona fide* purchaser for value as shown by the following authorities. (2 Pomeroy's Equity Jurisprudence, secs. 785, 786, 871, 918; 6 Cyc. 319.)

The Blue Sky Law: The stock sale in question was the only one proved to have been made or attempted to have been made by either the company or Mr. Loftus. The Act applies only to investment companies and stock brokers. The defendant company was not an investment company as defined by section 1 of the Act. Section 2 defines a stockbroker as one "who shall, in the state of Montana, engage in the business of dealing in

stocks," *etc.* A single transaction does not constitute "engaging in business." (*Roseberry* v. *Valley B. & L. Assn.,* 35 Colo. 132, 83 Pac. 637.) Acts of states such as the Blue Sky Law have invariably been held in violation of the commerce clause of and of section 1 of the fourteenth amendment to the federal Constitution. (*William R. Compton Co.* v. *Allen,* 216 Fed. 537.) The first Michigan Blue Sky Law was held unconstitutional. (*Alabama & N. O. Transp. Co.* v. *Doyle,* 210 Fed. 173.) In 1915 the legislature of Michigan passed a new law covering the subject, which on the thirtieth day of December, 1915, was held unconstitutional by the federal court. (Not yet reported.)

*Messrs. Brennen & Kendall,* for Respondents, submitted a brief; *Mr. H. A. Kendall* argued the cause orally.

The evidence shows that the defendants are brothers; that W. J. was indebted to J. H. Loftus, and that J. H. Loftus knew that the consideration of the note and mortgage was the purchase of stock in the company. The court and jury having seen and heard the defendants on the witness-stand, noted their personal appearance and manner of testifying, are the best judges as to whether or not they were telling the whole truth.

Under the law of the state of Illinois, J. H. Loftus took the note and mortgage subject to all of the defenses which could have been raised had they remained the property of the mortgagee, W. J. Loftus, and therefore it was not necessary to show actual notice of the fraud on the part of J. H. Loftus. (27 Cyc. 1324; *Bouton* v. *Cameron,* 205 Ill. 50, 68 N. E. 800; *Chicago Title etc. Co.* v. *Aff,* 183 Ill. 91, 55 N. E. 659.) "The mortgage follows the notes only in equity, and is subject in the hands of the assignee to any defense which would avail against it in the hands of the mortgagee himself, although the assignee may have purchased the note in good faith for a valuable consideration and before maturity." (Jones on Mortgages, sec. 838; citing *Olds* v. *Cummings,* 31 Ill. 188; *White* v. *Sutherland,* 64 Ill. 181; *Fortier* v. *Darst,* 31 Ill. 212; *Sumner* v. *Waugh,* 56 Ill. 531.)

The note in this case was made payable at Dixon, Illinois, and the assignment of the note and mortgage was made in that state. "A mortgage is governed by the law of the jurisdiction in which the mortgaged land is situated; but an assignment of the mortgage is a new and independent contract, and this is governed by the law of the place where it is made." (27 Cyc. 1282.) "An assignment of the mortgage is a new contract and passes a chattel interest, and the rights of the parties are governed by the law of the place where it is executed." (Jones on Mortgages, sec. 823.) We further submit that it was not necessary to show actual notice of fraud on the part of J. H. Loftus by reason of the note and mortgage being non-negotiable, and to sustain this contention the line of reasoning followed in the case of *Cornish* v. *Woolverton*, 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4, will apply with equal force to the facts in this case and especially to the construction of section 5031, Revised Codes, providing: "Several contracts relating to the same matters, between the same parties and made as parts of substantially one transaction are to be taken together."

Appellants claim that by reason of plaintiffs having transferred a one-third interest in the loan contract to F. H. McDermont, and that by reason of having, on March 3, 1914, sent their proxy in the name of the president to vote for stock they have precluded their right to relief therein. This question was not raised by a demurrer to the complaint, or in the defendants' answer, or upon the trial of the case, and will be deemed waived. (*Conrow* v. *Huffine*, 48 Mont. 437, 138 Pac. 1094; 16 Cyc. 176.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The plaintiffs, A. J. and J. M. Buhler, are father and son. On October 14, 1913, the latter executed and delivered to the defendant W. J. Loftus, a resident of Chicago, Illinois, his promissory note, negotiable in form, for the sum of $2,000, due and payable three years after date with interest at eight per cent

per annum. To secure the payment of the note he executed and delivered to Loftus a mortgage upon certain lands owned by him and situate in Flathead county. The mortgage was duly recorded on October 23. The $2,000 was the purchase price, agreed to be paid to Loftus by A. J. Buhler, of 100 shares of the capital stock of the American Mortgage Insurance Company, a corporation organized under the laws of the state of South Dakota and having its principal office at Chicago. The purpose of the organization of the corporation was to loan money upon the security of first mortgages on farm lands. It was authorized to do business throughout the United States. Hereafter it will be mentioned as the company. It was capitalized for $1,000,000, divided into shares of the par value of $10 each. Loftus was one of the agents of the company to sell shares of its stock and also to appoint local agents to negotiate loans for the company upon a commission. The plan pursued was that anyone desiring or agreeing to become a local agent was required to purchase from the company 125 shares of its stock at $20 per share. He was then required to enter into a written contract to cover a term of ten years, by the stipulations of which he was appointed the exclusive agent in certain designated territory, in consideration of his performing certain duties for, and assuming certain obligations to, the company. Loftus went to Polson, in Flathead county, the residence of the plaintiffs, to arrange for the appointment of one A. D. Maynard, also a resident of Polson, as local agent. Maynard being away from home, Loftus entered into negotiations with the Buhlers. The negotiations resulted in the purchase by A. J. Buhler of 100 shares from Loftus personally at $20 per share; the latter agreeing to accept the note and mortgage of J. M. Buhler in place of cash, and giving the assurance that A. J. Buhler would be appointed agent. The action of Loftus was ratified by the company, and the appointment was made on October 20. It was understood at the time that the two Buhlers and F. H. McDermont, an attorney at law then residing at Polson, should each have a one-third interest in the business transacted under the appointment; A. J. Buhler

alone being responsible to the company under his contract.   The company was not then ready to begin negotiating loans, but was to begin within two months thereafter.   It never did any business, however, for the reason that a sufficient number of shares of stock had not been and could not be sold to realize money enough to enable it to make loans.   The note was made payable at the City National Bank at Dixon, Illinois.   On January 6, 1914, W. J. Loftus assigned the note and mortgage to defendant John H. Loftus, a brother residing at Dixon, as part payment of a debt due the latter.   The assignment was recorded in Flathead county on May 16, 1914.   On May 25, 1915, plaintiffs brought this action to obtain a decree directing a cancellation of the note and mortgage, on the ground of fraudulent representations by Loftus whereby plaintiff J. M. Buhler was induced to execute and deliver them.   As ground for relief, the complaint alleges: "(5) That it was represented to plaintiffs, at the time said plaintiff A. J. Buhler entered into said agency contract, by the defendant W. J. Loftus, and the president of the defendant the American Mortgage Insurance Company, H. A. Luther, that the said defendant company; although not fully organized, had not sold all of its capital stock, and was not quite ready to commence business, or to make and accept farm loans in the territory above described, but would be ready for business and accept loans in said territory within about two months from the date of making and entering into said contract, and that the said defendant loan company would allot to plaintiff A. J. Buhler, from month to month, that proportion of its available funds as the number of shares of its capital stock purchased by plaintiff A. J. Buhler bears to the total number of shares of its capital stock then sold for loaning purposes, which would amount to, as a loaning fund, at least $100,000 annually."   It is then alleged in substance: (6) That in order for plaintiff A. J. Buhler to secure the appointment as the sole and exclusive agent of the company, and to secure his approval of the contract, it was represented by Loftus that said Buhler was required to purchase at least 100 shares of the capital stock of the com-

pany at $20 per share, or a total of $2,000; (7) that in consideration of A. J. Buhler securing the contract, and that he would be furnished with money for the making of loans in the said territory, Buhler purchased the 100 shares for the sum of $2,000, and gave in payment therefor his promissory note, payable to the order of Loftus, and that it was signed and indorsed by J. M. Buhler; (8) that thereafter, and on the same day, the plaintiff J. M. Buhler, to secure the payment of the note, and for no other purpose, executed and delivered the mortgage; (9) that thereafter, on or about November 3, 1913, the company issued and delivered to A. J. Buhler the shares of stock, having on October 20 approved the contract and delivered the same to him, thus constituting him its sole and exclusive agent in the said territory; (10) that by reason of the statements and representations before mentioned A. J. Buhler was induced to purchase the shares, to enter into the contract, and to make the promissory note and mortgage and deliver the same to W. J. Loftus; (11) that the representations were wholly false and untrue, that they were then known by the company and Loftus to be false and untrue, that they were made with the intent and purpose of inducing the plaintiff A. J. Buhler to purchase the stock, and to secure from him and J. M. Buhler the note and mortgage, that the company was at all times unable to sell a sufficient amount of stock or otherwise to raise money with which to begin business, or to carry out its contract and agreement with A. J. Buhler, that it has never at any time furnished said Buhler with any money to make farm loans, that the company was insolvent and without funds with which to carry on business, and unable to perform any of the terms of its agreement with A. J. Buhler, and that it was well known to both Loftus and the company, when the note and mortgage were delivered to Loftus, that the company must at an early date go out of business and be dissolved; (12) that the mortgage was recorded in the office of the clerk of Flathead county on the —— day of November, 1913; (13) that by reason of the facts heretofore alleged the mortgage and note were given to W. J. Loftus with-

out any consideration, and are wholly null and void, that the company has wholly failed to perform any of the terms of the contract with A. J. Buhler, that the shares of stock are entirely worthless, and that the plaintiffs herein offer to return them to the defendants; (14) that on May 16, 1914, in the state of Illinois, the defendant W. J. Loftus made a pretended assignment of the note and mortgage to his codefendant John H. Loftus, which was thereafter recorded in the office of the clerk of Flathead county; and (15) that John H. Loftus is not a *bona fide* purchaser under the laws of the state of Illinois.

The company, though named as defendant, was not served with summons and did not appear in the action. The answer of the defendants Loftus denies all the allegations of the complaint charging fraud or misrepresentation by W. J. Loftus, and alleges that after the 100 shares of stock were sold to A. J. Buhler he authorized the company to transfer thirty-three shares to F. H. McDermont. In a pleading designated as a reply the plaintiffs allege in effect that the note and mortgage are void for the reason that neither W. J. Loftus nor the company had complied with the laws of Montana (Chapter 85, Laws 1913, p. 367), relating to investment companies and stock brokers, enacted for the protection of investors, *etc.* The court called a jury to aid in ascertaining the facts, and submitted special interrogatories. Some of their findings the court adopted. It made formal findings on all the issues in favor of plaintiffs, and decreed to them the relief demanded. The defendants have appealed.

It would extend this opinion beyond any reasonable limits were we to give special notice to all the assignments made and argued by counsel. Many of them are not of sufficient merit to deserve even passing notice. We shall discuss only those which counsel seem to deem of controlling importance.

We notice, first, the contention that the complaint does not [1] state a cause of action. This question was presented at the opening of the trial by an objection by defendants to the introduction of evidence. Much of the argument on the assignment

is more appropriately addressed to an inquiry whether the pleading is ambiguous and indefinite. Since it was not tested by special demurrer, however much it may be subject to criticism for defects in these particulars, this court is now confined to the single inquiry whether it states sufficient facts to warrant the relief demanded.

It is argued that the representations by which plaintiff A. J. Buhler was induced to enter into the contract of agency were [2, 3] mere matters of opinion or related to what was to happen in the future, and that, though they turned out to be false, they did not constitute fraud, entitling him and his coplaintiff to have the mortgage and note canceled. It is true, as counsel contend, that parties are allowed under the law the greatest freedom of contract; that this is essential to the welfare of the community; that in their negotiations parties must be left to investigate for themselves and rely upon their own judgment; that the power vested in the courts to cancel contracts on the ground of fraud is extraordinary, and will be exercised only in cases in which the complaining party, free from fraud himself, has been deceived to his injury by his adversary; that the ultimate facts constituting the fraud must be specifically alleged, in order that the court may know whether, if proved, they will warrant the relief demanded, and that the adversary may know the particular charge he is to meet; that a misrepresentation as to what will be done in the future, or a statement of intention, or, generally, a mere expression of opinion, however erroneous, is not sufficient; but that the representation must relate to a present or past state of facts. In other words in order to make out a case of fraud, the pleading must allege facts embodying the following essential elements: (1) That the defendant made a representation or statement, intending that plaintiff should act upon it; (2) that the representation was false; (3) that the plaintiff believed it; and (4) that he acted upon it to his damage. (*Butte Hardware Co.* v. *Knox,* 28 Mont. 111, 72 Pac. 301, and cases cited; *Power & Bro.* v. *Turner,* 37 Mont. 521, 97 Pac. 950; *Ott* v. *Pace,* 43 Mont. 82, 115 Pac. 37; *Henry* v. *Continental B.*

& L. Assn., 156 Cal. 667, 105 Pac. 960; Crocker v. Manley, 164 Ill. 282, 56 Am. St. Rep. 196, 45 N. E. 577; Southern Dev. Co. v. Silva, 125 U. S. 247, 31 L. Ed. 678, 8 Sup. Ct. Rep. 881; 2 Pomeroy's Equity Jurisprudence, sec. 878.)

The fact concerning which the statement is made, however, [4] may be with reference to the future, but so related to present existent conditions that its affirmation as a fact will constitute a fraudulent representation within the rule of the cases cited. On this subject we find this in the text of Mr. Pomeroy: "That the fact, however, concerning which the statement is made, is future, does not itself prevent the misrepresentation from being fraudulent. The statement of matter in the future, if affirmed as a fact, may amount to a fraudulent misrepresentation, as well as a statement of a fact as existing at present." (2 Pomeroy's Equity Jurisprudence, sec. 877.)

In support of this statement the author cites, among other cases, Piggott v. Stratton, 1 De Gex, F. & J. 33, 49, and Hutton v. Rossiter, 7 De Gex, M. & G. 9, 22, 23. To these may be added Pickard v. Sears, 6 Ad. & E. 469, Fall River Nat. Bank v. Buffinton, 97 Mass. 498, and Chouteau v. Goddin, 39 Mo. 229, 90 Am. Dec. 462. In the first of these cases Lord Chancellor Campbell said: "I apprehend that the injunction is to be supported on the well-established doctrine that if A makes a deliberate assertion to B, intending it to be acted upon by B, A is estopped from saying it was not true. If it turns out to be false, A is answerable for the damage which may have accrued to B from having acted upon, and B is entitled, in respect of anything done in the belief that it was true, to object to any denial of it by A." In the note to the text of Mr. Pomeroy, supra, this remark is made referring to the cases cited: "Some of these cases may be referred to the doctrine of equitable estoppel; but it is plain that, where the representation is that of a fact in the future, and not a mere promise, and it is relied upon, and turns out to be false, the rights and remedies of the injured party are the same as those which arise from the fraudulent representation of an existing fact." Under this rule, the representation,

we apprehend, will operate as an estoppel in favor of the injured party, or may be availed of by him as a ground for the cancellation of a contract entered into upon the faith of it, according to the attitude occupied by the parties in the particular controversy, and the character of the relief sought.

The complaint is not a model of clearness and orderly statement; but, assigning to the several parts of it their obvious meaning and purport, and construing it as a whole under favor of the familiar rule that "whatever is necessarily implied in, or [5] is reasonably to be inferred from, an allegation, is to be taken as directly averred" (Phillips on Code Pleading, 352; Bayliss on Code Pleading, 49; *County of Silver Bow* v. *Davies*, 40 Mont. 418, 107 Pac. 81), we think it alleges sufficient to bring it within the rule stated by Mr. Pomeroy, *supra.*

The purpose of the negotiations had between the parties was [6] that A. J. Buhler should become the exclusive agent for the company in the territory mentioned. The representation which operated as the inducement is alleged in paragraph 5. It is in effect a categorical statement that, while the company was not then ready to begin business, it was in such a condition that it would be ready in about two months and prepared to furnish the funds required to enable A. J. Buhler to negotiate loans in its behalf. In paragraphs 6, 7 and 8 is alleged the consideration demanded by Loftus for the contract, the purchase of the shares of stock which was made a condition precedent to the appointment, and the execution of the note and mortgage to secure the consideration to be paid, instead of paying it in cash. Paragraph 9 recites the approval of the negotiations by the company, the issuance of the shares of stock, and the final appointment for which the consideration was promised. Paragraph 10 alleges in effect that, by reason of his belief in and reliance upon the alleged statements of Loftus and Luther, the president, A. J. Buhler was induced to purchase the shares and to enter into the contract of appointment for the consideration demanded. Paragraph 11 alleges that the representations stated in paragraph 5 were wholly false, that they were known by Loftus and

the president of the company to be such, that they were made with the intention to deceive and defraud the plaintiffs and to induce the execution of the note and mortgage, and that the company was unable at any time to sell its stock or to raise money otherwise to make loans or to furnish A. J. Buhler money for that purpose, in that it was insolvent at the time the contract was made.

If the representation had been in the form of a promise merely that the company would furnish A. J. Buhler money within two months of the date of appointment, it being able at the time and intending to do so, its failure to keep the promise would have been a breach of the contract. The plaintiffs, however, understood—and it was the intention of Loftus that they should understand—that the company had then approached a condition of readiness such as to enable it within two months to engage in the business which it was organized to conduct. This was tantamount to an affirmation of a matter in the future as a fact existing at the time the contract was made, and was the inducement upon which he effected the sale of the stock and the execution and delivery of the note and mortgage. It amounted to the suggestion as a fact of that which was not true, by Loftus, who did not believe it to be true, and was therefore a fraud, within the meaning of subdivision 1 of section 4978 of the Revised Codes. In any event, his statements amounted to an ''act fitted to deceive.'' (*Id.*, subd. 5.)

It is argued that the complaint is insufficient, also, in failing [7] to allege in specific terms that plaintiffs are without an adequate remedy at law. Whether the particular case alleged is one of equitable cognizance depends solely upon the specific averments upon which the demand for relief is predicated. The addition of the jurisdictional clause does not aid it in any way. It is merely a conclusion of law to be drawn by the court, not by the pleader, from the specific facts alleged. The allegation of it is therefore wholly unnecessary. (16 Cyc. 222.)

It is also argued that it does not appear that the plaintiffs [8] have offered to restore to the defendants the shares of

stock.   This argument is without merit.   The concluding clause of paragraph 13 is sufficient allegation on this subject.   (*Maloy* v. *Berkin*, 11 Mont. 138, 27 Pac. 442.)

During the course of the trial the court permitted certain [9] amendments to be made to the complaint.   It is argued that this was error, in that the effect of the amendments was to make the complaint state a cause of action; whereas, before they were allowed, it was fatally defective.   There was no error. The power to allow the amendments at any stage of the trial is within the discretion of the trial court, and its action in this behalf is not subject to review by this court, unless it is affirmatively shown that it abused its discretion to the prejudice of the adverse party.   (Rev. Codes, sec. 6589; *Bennett* v. *Tillmon*, 18 Mont. 28, 44 Pac. 80; *Merrill* v. *Miller*, 28 Mont. 134, 72 Pac. 423; *Sandeen* v. *Russell Lumber Co.*, 45 Mont. 273, 122 Pac. 913; *De Celles* v. *Casey*, 48 Mont. 568, 572, 139 Pac. 586.) Though the defendants demanded a postponement of the trial, because of the allowance of one of the amendments, they presented no affidavit showing that they were surprised, or that they were not ready and able to produce all the evidence they desired.   Indeed, it is apparent that they introduced all the evidence they had at their command.

Error is predicated upon the admission in evidence of Exhibits [10]  "D" and "F."   The first was a letter addressed to the stockholders, ostensibly by H. A. Luther, president of the company, under date of April 21, 1914, conveying the information that at the annual meeting of stockholders held in Chicago on April 7, 1914, it had been determined to surrender the Chicago office and remove general headquarters of the company to Aberdeen, South Dakota; that a committee had been appointed, whose chairman was W. S. Narregang, of the latter place, himself a stockholder, to suggest a feasible plan to conduct the business of the company; and that all letters addressed to the company should be addressed to Narregang until May 23, to which date the meeting of April 7 had been adjourned to reconvene at Aberdeen.   It contained what purported to be resolutions adopted

at the April meeting. Exhibit "F" was a letter written to A. J. Buhler by Narregang on August 13, 1914, stating in effect that the company was going out of business, and was not in a position to make any loans of any kind. These were introduced, as tending to show that the company was in a failing condition, and hence that the representations of Loftus were false. They were not shown by any evidence to have been in fact signed by their purported authors, or identified as genuine. They were, therefore, not admissible for any purpose.

Like objection was made to the introduction of Exhibits "H" and "I." The first consisted of an order by the circuit court [11] of the fifth judicial district of South Dakota, made on May 13, 1914, appointing one Arthur M. Cole temporary receiver to take charge of the property and assets of the company, in an action entitled *S. W. Narregang* v. *American Mortgage Insurance Company*. The second was a copy of the register of actions in the cause, disclosing the different proceedings had in it until it ended. Both were exemplified as required by section 7911 of the Revised Codes. They were introduced to show that the company had been forced into the hands of a receiver as an insolvent, and that it had thereafter been dissolved. Both these exhibits were mere fragments of the record, and did not tend to show for what cause the receiver was appointed, nor what was adjudicated by the final judgment. They were not, therefore, competent for any purpose. The order was interlocutory, and did not adjudicate anything. The register of actions merely indicated that certain steps had been taken in the action. Assuming that the final judgment in the action would have been admissible for the purpose intended (the company was not made a party to the present action), it could be made available only by the production of an exemplified copy of the entire record, or so much of it as would disclose the issues made by the pleadings and what was finally adjudicated in the action.

In support of the allegations in their reply, the plaintiffs [12] were permitted to introduce the deposition of Honorable William Keating, the state auditor and investment commissioner

of Montana, to show that neither W. J. Loftus nor the company had been licensed to transact business of any kind in Montana. It is not necessary to inquire whether the sale of the shares of stock to plaintiffs was a doing business in the state, within the meaning of the statute relating to investment companies, *supra,* sought to be invoked by plaintiffs, or whether, if the sale of the shares was void, the plaintiffs were entitled for this reason to have the note and mortgage canceled. The allegation of new matter in the reply to impeach the sale transaction constituted a distinct departure in the pleadings, and presented an issue upon which no relief could be predicated. The office of a reply is to join issue upon the counterclaim, or the new matter of defense alleged in the answer, or to avoid it, as the case may be. It may, in a particular instance, aid the answer; but it cannot aid the complaint, by supplying an omission therein or broadening its scope, by adding to it a new ground of relief. (*Thornton* v. *Kaufman,* 35 Mont. 181, 88 Pac. 796; *Waite* v. *Shoemaker,* 50 Mont. 264, 146 Pac. 736; *Doornbos* v. *Thomas,* 50 Mont. 370, 147 Pac. 277; Bliss on Code Pleading, 437; 9 Cyc. 747.) The objection to these items of evidence should have been sustained.

Other rulings upon the admissibility of evidence are also assigned as error. None of these require special notice, save those which had reference to the means of proof of the unwritten law of the state of Illinois relating to the nature of the right acquired by the assignee of a trust deed or mortgage and the note secured by it. We shall notice these later when we come to inquire whether John H. Loftus became the owner of the note and mortgage free from equities in favor of plaintiffs.

Counsel strenuously insist that the rulings just noticed entitle [13] defendants to a reversal of the decree. If the court had adopted the findings of the jury without further consideration, and rendered its decree thereon, the argument of counsel would perhaps have some plausibility. (*Wetzstein* v. *Largey,* 27 Mont. 212, 70 Pac. 717.) This, however, the court did not do. The formal findings were made after careful consideration of the

evidence by the court, and after argument by counsel for defendants on their motion asking the court to reject the findings of the jury and adopt findings in favor of defendants. Under the circumstances, we may presume that the trial judge based the findings upon so much of the evidence as was competent and substantially material, rejecting such as ought to have been rejected. (*Finlen* v. *Heinze*, 28 Mont. 548, 73 Pac. 123; *Lane* v. *Bailey*, 29 Mont. 548, 75 Pac. 191; *State* v. *Driscoll*, 49 Mont. 558, 144 Pac. 153.)

The next assignment we will consider is that the evidence is insufficient to justify the findings. Since the appeal is from the judgment only upon a bill of exceptions, the question presented by the assignment is, not whether the trial court abused its discretion in denying defendants a new trial, but whether there is any substantial evidence to support the findings as made. We shall not undertake to state and discuss the evidence with reference to the different findings in detail. It is sufficient to say that, with the exception of the finding of the specific date at which the receiver was appointed, and the finding that neither W. J. Loftus nor the company had been licensed to do business in Montana, to which reference will be made later, the findings are responsive to the general scope and meaning of the allegations of the complaint, and are supported by substantial evidence. It is true that it is alleged in the complaint that the note was that of A. J. Buhler, and that it was signed and indorsed by J. M. Buhler, and that the evidence shows that it was signed by J. M. Buhler only, and not indorsed by him. This is not a material variance, as counsel contend. The note and mortgage were given by J. M. Buhler to secure the appointment of A. J. Buhler as the exclusive agent of the company, and to enable the latter, as between the two, to have an interest in the commissions earned in the business. It appears incidentally, also, that it was the intention of A. J. Buhler that one-third of the shares of stock, when issued, should belong to F. H. Mc-Dermont, one of counsel for plaintiffs, who, as between him and the Buhlers, was to have a one-third interest in the commissions

earned in the business. It is insisted, therefore, that it appears that McDermont owns an interest in the stock, and hence that this condition of the evidence constitutes a material variance. The certificates themselves, however—one for sixty-seven shares and the other for thirty-three shares—were at the time of the trial still owned by A. J. Buhler, and were then tendered by him to the defendants. There was, therefore, no variance in this regard. The fact that the plaintiffs and McDermont had an agreement among themselves to share in the commissions to be earned is not of consequence.

It is insisted that there is no evidence tending to show that the stock is of no value. While, as we have said, the evidence introduced by plaintiffs, heretofore referred to as tending to establish the fact that the company was insolvent and that the stock was worthless, was incompetent, the defendant W. J. Loftus during the giving of his testimony admitted, in effect, that when the contract with A. J. Buhler was made, and he secured the note and mortgage, the company was in a condition of insolvency. According to his testimony, the company was organized and commenced selling stock in the spring of 1912. Though at the time the contract was made it had been engaged for more than a year in the attempt to accumulate sufficient cash from stock subscriptions to begin business, and had nominal assets to the amount of $175,000, it had accumulated but a small amount of cash; the great bulk of its assets consisting of subscription notes payable on the condition that all the stock had been subscribed for. The officers of the company were making every effort to get the stock disposed of, but had failed to do so, and he attributed this condition to a stringency in the money market. He admitted, however, that the company had gone into the hands of a receiver in May, 1914, at the suit of Narregang, one of the largest creditors. Taking the testimony as a whole, it furnishes some basis for the inference that the stock was not worth $20 per share, nor any other amount. Aside from this, however, the main purpose of the transaction was to secure for A. J. Buhler the appointment as exclusive agent of the company

upon the implied assurance that it was practically ready to begin business. The purchase by him of the stock was not as an investment, but to qualify himself to secure the appointment, so that he would thereafter have a profitable business; and it is clear from all the evidence that, but for the assurance of the appointment, he would not have bought the stock. True, he was awarded the appointment; but it was without value, and the purpose he had in view failed of accomplishment entirely. In fact, the net result was that he did not get what he contracted for, and that W. J. Loftus secured a sale of stock owned by him personally at double its nominal value; whereas, when questioned as to its actual value, he was not willing to go further than to say that it had a value of about $16, basing this opinion upon his estimate of outstanding conditional subscription notes. On the whole, we think that the evidence, direct and circumstantial, is sufficient to justify the findings, so far as they are material and responsive to the allegations of the complaint. In view of this conclusion, the finding touching the matter of failure by Loftus and the company to obtain license under the statute, *supra,* may be eliminated and disregarded as immaterial. The same disposition may be made of the criticism of the finding as to the exact date when the receiver of the company was appointed.

It remains to inquire whether John H. Loftus took the note and mortgage free from all equities in favor of J. M. Buhler. [14] Since the assignment was made in Illinois, counsel for the plaintiffs assumed that the assignee's rights were to be determined by the unwritten law of that state, and offered evidence to prove it. The mode adopted was this: Mr. Kendall, one of counsel for plaintiffs, testified in effect that he had become acquainted with the decisions of the supreme court of Illinois by reading the opinion in the case of *Bouton* v. *Cameron,* as published in 205 Ill. 50, 68 N. E. 800, and other cases. Thereupon the opinion was admitted over the objection, among others, that Mr. Kendall had not disclosed sufficient knowledge to lay the foundation for its admission. The means by which such

proof may be made are prescribed by section 7908 of the Revised Codes. (See, also, *Ridpath* v. *Heller*, 46 Mont. 586, 129 Pac. 1054.) We shall not stop to determine whether the evidence was properly admitted. Assuming that the law of the state of Illinois is as counsel undertook to show, the law on the subject in this state is the same, and the conclusion reached by the trial court would have been the same, though the evidence had been rejected. The note did not refer to the mortgage and upon its face was negotiable. If it had been transferred to John H. Loftus by indorsement, without mention of the mortgage, what rights he would have acquired would have depended upon the solution of a different question from that before us, *viz.*, whether, in view of the restrictive provision found in section 6861 of the Revised Codes, he would have acquired the rights of a holder in due course under the Negotiable Instrument Law (Rev. Codes, sec. 5906). The transfer, however, was made by written assignment of the note and mortgage both; W. J. Loftus indorsing the note without recourse. John H. Loftus, therefore, took it with full knowledge that it was a mortgage note, collectible by him only as such, under the provisions of section 6861, *supra*. It therefore did not come into his hands as "a courier without luggage," but as a non-negotiable instrument, subject to all the equities existing in favor of J. M. Buhler at the time he received it. This was expressly so held by this court in *Cornish* v. *Woolverton*, 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4, and that case is conclusive of this. Though the recorded written assignment gave J. M. Buhler constructive notice that John H. Loftus had become the owner of the note, it did not serve in any wise to cut off Buhler's right to impeach the note on the ground that it had been secured by fraud.

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.