DIETZ, Respondent, *v.* RABE, Appellant.

(No. 4,931.)

(Submitted November 23, 1922.  Decided December 21, 1922.)

[211 Pac. 343.]

*Real Property—Vendor and Purchaser—Contracts—Termination by Mutual Consent—Forfeitures—Trial—Instructions—Law of Case—Pleadings—Amendments During Trial—Discretion.*

Trial—Instructions—Law of Case.
 1.  Instructions given without objection become the law of the case in respect of the matter with which they purport to deal.

Vendor and Purchaser—Land Contract—Termination by Mutual Consent—Right to Return of Down Payment.
 2.  Where plaintiff had contracted with defendant to purchase land, making a down payment and agreeing to make deferred payments, and upon his failure to make the latter the contract was terminated by mutual consent, plaintiff was entitled to a return of the down payment, and defendant who thereafter had sold the land at a higher price than that agreed to be paid by plaintiff was in no position to exact forfeiture of the first payment.

Trial—Pleadings—Amendment During Trial—Discretion.
 3.  In the absence of a showing of abuse of discretion, refusal to permit defendant to amend his answer for the purpose of pleading the statute of limitations, *held* not error, the power to allow or refuse amendments at any stage of the trial being discretionary with the trial judge.

Vendor and Purchaser—Cost of Improvements Made Without Consent of Vendor not Recoverable.
 4.  Where the vendor of land had not requested the purchaser to erect fences thereon, and the contract of purchase was terminated by mutual consent before the land had been fully paid for, in the purchaser's action to recover the down payment, to admit testimony concerning the cost of the fence and improper to include its cost in the damages awarded.

*Appeals from District Court, Fallon County; Stanley E. Felt, Judge.*

ACTION by Frank Dietz against Edward Rabe.  From a judgment for plaintiff and from an order denying defendant a new trial, defendant appeals.  Modified and affirmed.

Cause submitted on briefs of Counsel.

*Messrs. Booth & McLemore,* for Appellant.

*Mr. D. R. Young,* for Respondent.

MR. JUSTICE COOPER delivered the opinion of the court.

This action was brought to recover the sum of $500 as part of the purchase price of 320 acres of land situated in Fallon county. At the time of the making of the bargain, there existed upon the land two mortgages aggregating $1,000. According to the complaint, the agreement between the plaintiff and the defendant was that, if the former would pay $500 to defendant as an initial payment, he could have as much time as he needed to complete the purchase at the rate of $8 per acre. This the answer denies, and it alleges that the $500 was paid to defendant upon the understanding that the plaintiff would have an option to purchase the land for one year at $8 per acre, his commission to be all that he could obtain over that price, and, if he failed to make a sale within the time and under the terms stated, the deposit of $500 should be forfeited; that during the life of the option the plaintiff should have possession of the land with the right to raise a crop thereon and to take the proceeds; that the plaintiff should pay the interest on the mortgages during the year and be credited with the amount so paid in case he made the sale; that the plaintiff took possession of the land and raised a crop thereon, the proceeds of which amounted to more than the $500 paid by him; that he failed to sell the land, failed to pay the interest on the mortgages, failed to keep his contract to purchase, and was unable to sell the land, and requested the defendant to do so; that thereafter defendant sold the land; and that at all times he was ready, able, and willing to perform his undertaking.

The case upon the evidence was submitted to a jury, which made findings to the effect that the verbal contract was not an option; that it did not provide for a forfeiture of the $500;

that the defendant, and not the plaintiff, failed to comply with his agreement; that at the time it was rescinded it was not the intention of the parties that the $500 payment should be forfeited; that the reasonable value of the use of the land during the year 1915 was $75; and that the value of the improvements placed thereon by plaintiff and the taxes and interest paid by him during the time it was occupied by him was the sum of $148.50. Upon the findings and a general verdict in plaintiff's favor judgment was rendered and entered. Defendant appeals from the judgment and from an order denying him a new trial.

The defendant's argument is that rescission is effected: (1) By an agreement which implies reciprocal restoration; (2) when imposed by one party for the default of the other; and contends (3) that the case falls within the latter class. Plaintiff's contention is that, notwithstanding the default, he is entitled to be placed *in statu quo,* under section 6039, Revised Codes of 1907, because by mutual agreement, he restored the land to defendant.

The agreement was entirely oral, and its character was the disputed question for the jury to decide. They found that there was a mutual agreement to rescind. The defendant asks nothing by reason of the default, but claims the money upon the ground that it was forfeited to him. Of the eight alleged errors, only four need be noticed.

The defendant predicates error upon the refusal of the [1] court to give his proposed instructions numbered 3 and 4. The court's instructions of like number cover the same subject matter as did the refused instructions. They, having been given without objection, became the law of the case in respect of the matter with which they purport to deal. (*Daniels* v. *Granite-Bimetallic Co.,* 56 Mont. 284, 184 Pac. 836.) In them the court told the jury that, where a contract between two parties is rescinded or abandoned by mutual consent without any specification as to the return of the money paid as a consideration, each party is nevertheless bound to return the consideration so received; that rescission is

determined by the acts of the parties and the circumstances attending their relations to each other.

The next error assigned challenges the sufficiency of the evidence and leads us to look at the relative position of the two parties to see if the evidence presented a dispute. The plaintiff and the defendant were both foreign-born, and, while their words were not well chosen, their intentions are susceptible of being very well understood. The plaintiff took the stand in his own behalf and testified to the following: About the middle of October, 1914, he went into the saloon of the defendant at Plevna, Montana, and asked him if he would sell him the land above referred to; that defendant answered "Yes," for $8 per acre, and adding that he owed $1,000 which was secured by two mortgages thereon; that, if the plaintiff would pay him $500 in cash and assume the mortgages, he would give him all the time he wanted to pay the balance, at six per cent per annum interest; that he then stated, "If I can get that money, I take it, but still you got to give me a clear deed and abstract and you can take a mortgage back on the balance of the money, or I give you a note and let my two boys sign it"; that the defendant replied, "Anything suits me so I get the $500; I need it in my business"; that he paid the money to defendant and obtained from him a receipt reading as follows: "Plevna, Mont., Oct. 23, 1914. Recvt. of Frank Deitz $500 paid down on my land. Ed Rabe." He also testified that he had asked defendant about November 13 for a deed and an abstract "and to make a mortgage out, or note, one or the other"; that "he say he was busy. He say, 'Come around some other time; I am busy now; it take a little time to get an abstract made out, anyway.' I asked him that two or three times more. He was always busy. He say, 'Come around some other time.' I never saw the papers. He never furnished me with a deed or abstract. He had possession of the land. The boys were on it a year before I bought it." He also testified that he improved the land by putting a partition fence through it at a cost of $52.50; paid the taxes for the year 1915, and $34.50 for his share of the interest;

that at the time of the delivery of the money he told the defendant he would be willing to pay the interest from October 23 to March 1, the defendant to pay the rest, "and he say, 'That is all right,' and then I send him the money; it took $34.50 to pay the interest on that money, for my share"; that, while the plaintiff was absent from the state, the following letters passed between them:

"Plevna, Mont., April 8, 1915.

"Mr. Frank Dietz—Dear Sir: Would like to find out wan you com back to Mont dare have been som land byars hear I could of sold dott place for $3 more an acker dan you paid But I donth know Watt you want two doo Pleace lett me know wan you I bee back So we can aRanch with the prepares an a bout assason the land

"Yours truly,
"ED RABE."

"Plevna, Montana, March 7, 1916.

"Mr. Frank Dietz—Dear Sir: Has I have wrote you two letters & have received no answer, will write once again, to find out what you are planning on doing. First, have you paid taxes on land, & also paid the interest on the loan on the land? The interest of the money I have coming from you has been due the 30th of Nov. 1915. I have never heard from you or never received any interest on the money. I have another chance to turn this land to another party for just as good a deal as you have, & if don't want me to close this deal, wire me at once. Let me know if you are going to come across with your payments? If I don't hear from you within 10 days from date of the latter the land will be resolded to another party.

"Yours truly,
"ED RABE, Plevna, Mont."

"Cedar Rapids, March 9—16.

"Dear Frind Ed Rabe—Dear Sir: Your letter from March 7 receved to day. I wrote you a letter a month ago and told you to pay the interest on that loan and was going to send

you the 100 dollar on the loan and also the interest to you. I sold a piece of land here and the party told me the would pay me the money by the 1 of March bould the could not get the money by that time so I could not pay the interest the taxes is paid . Frank paid it and he got the Reced Not if you can sell it to an other party better sell it and close the deal so soon as you can get your money and pay the interest to the Loan Company. I told Frank and Joe to pay the interest bould the did not pay it so better sell it and close the deal  please let me know how you coming out with it. I remain your frind,

"Frank Dietz,

"Cedar Rapids Iowa, 1006 North 5 Street west.

"I hope this letter will rich you in time. I am well and hoping the same from you and famile."

After receipt of the letter from plaintiff the defendant sold the land to a third person at $9 per acre. Plaintiff also testified that upon his return home he asked the defendant to return the money; that the latter put him off with the remark, "I can't settle now; come around some other time"; that after the lapse of a month or so he again demanded the $500 to which defendant answered, "I am not ready to settle now; I want to see somebody else first, ask somebody else about this business; come around some other time"; that to a later request for a settlement the defendant said, "I won't give you a damned cent; let the court decide." He further stated that he wrote to the defendant that he was able and willing to "go through this deal," but that he was not going to pay any more until he got "these papers," referring to the abstract and deed; that, "when he done that, I would fill my contract."

Joseph Henry Dietz, the plaintiff's son, without objection testified that he talked with the defendant "about the matter after the deal was made," and that he told the witness "that he had sold the place to my dad; that Dad paid him $500 down; and that he agreed to give him as much time as he wanted on the rest."

The evidence on behalf of the defendant was to the effect that the agreement was that the plaintiff should have an option for the period of one year in which to buy the land himself at $8 per acre, or to sell it for as much more as he could get, his commission to be all that he could get over $8 per acre; the consideration for the option being the $500 paid by the plaintiff.

The plaintiff's unreadiness was the result of his inability [2] to obtain the money as he had expected, while that of the defendant was because he saw an opportunity to make a better bargain than he had already made with the plaintiff. While the plaintiff's failure has the legal effect of depriving him of his right to enforce the contract, the defendant was not without fault or in a condition to exact the forfeiture of the money plaintiff had paid. The defendant received the money rightfully, but, when the contract was brought to an end by the mutual consent of the parties to it, it became his duty to return it. The jury so found upon evidence which amply supports the judgment.

The refusal of the court to permit the defendant, at the [3] close of plaintiff's case, to amend his answer for the purpose of pleading the statute of limitations, was not error. The power to allow amendments at any stage of the trial is within the discretion of the trial court, and is only subject to review when it affirmatively appears that its discretion has been abused to the prejudice of the adverse party. (*Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601.)

The next specification of error relates to the testimony of [4] John Henry Dietz concerning the cost of the fence built by him which, as he said, was done "to fix the place up for ourselves" and without the request of the defendant. In this counsel's position is correct. (*Suburban Homes Co.* v. *North,* 50 Mont. 108, Ann. Cas. 1917C, 81, 145 Pac. 2.) This amount was improperly included in the award. The admission of this evidence, however, was not so prejudicial to defendant's case as to call for a reversal of the judgment.

The cause is remanded to the district court of Fallon county, with directions to modify the judgment, as of the date of its rendition, by reducing the amount of the recovery in the sum of $52.50, the cost of the building of the fence. As thus modified, the judgment will stand affirmed, as will also the order appealed from; each party to pay his own costs.

*Remanded with directions.*

ASSOCIATE JUSTICES FARR, HOLLOWAY and GALEN concur.

MR. CHIEF JUSTICE CALLAWAY, being absent, takes no part in the foregoing decision.