DAN W. SWECKER and PAULINE SWECKER, Plaintiffs
and Appellants, v. CATHERINE BADURA and MAR-
GARET BADURA, Defendants and Respondents.

No. 10343

Submitted November 14, 1962. Decided January 4, 1963.

377 P.2d 752.

Dillavou & Hauf, John A. Hauf (argued orally), Billings, for appellants.

Michael J. Whalen (argued orally), Billings, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment in favor of defendants, after findings of fact and conclusions of law made by the district court sitting without a jury.

Hereinafter, plaintiffs and appellants will be referred to as the seller, defendants and respondents as the buyer. The facts giving rise to this appeal are as follows.

The seller was a real estate dealer in Billings, working out of the office of one Phil Sheridan, a realtor. The seller operated a hotel business, the Clark Hotel in Billings. Seller had a five-year lease on the Hotel from its owner, one Kohn. Seller owned the furnishings.

The buyer was a farm wife with no business experience. Sometime before March 13, 1959, the buyer accompanied her husband to downtown Billings. While her husband transacted business she remained in the automobile. The seller approached her with the proposition of buying the Clark Hotel.

Subsequently the seller with Phil Sheridan went to the buyer's home and Phil Sheridan "closed the deal."

Sheridan prepared what is called a "conditional sales contract" between the buyer and seller. The agreement described as a "conditional sales contract" was plaintiff's Exhibit 1. It described the seller and buyer. The seller is described as "doing business under the firm name and style of the Clark Hotel." It also provided:

"That said owners do hereby sell, subject to all terms of a certain lease dated January 19, 1954, between the sellers and Rose Kohn of Los Angeles, California, * * * a copy of which is hereto attached."

The property which was the subject of the sale is described as:

"All of the personal property, furnishings and equipment *pertaining to the aforementioned business hereby being sold,* and as set forth on the list attached hereto and made a part hereof." Italics supplied.

Neither a copy of the lease referred to as attached, nor the list of personal property referred to as attached was, in fact ever attached to the agreement. The list was admitted as plaintiff's Exhibit 2. The district court found that "While the complaint alleges that they [sellers] sold only personal property, it is clear from the contract that the business known as the Clark Hotel is being sold * * * subject to the terms of a lease * * *."

The lease was entered into January 19, 1954, between Rose Kohn and the seller here for a term of five years and nine months at a rental of $400 per month. It contained these pertinent provisions among others:

"This lease shall not be assigned without the written consent of first party had and obtained. Furthermore, the said premises *as a whole shall not be sublet to another person by second parties unless second parties first obtain the written con-*

*sent* of first party, it being agreed that said premises shall be used only as a hotel and sublet in the usual manner as such."

"That second parties shall have the privilege of renewing this lease for a further period of five years, rent to be agreed upon by both parties herein named, and on the same terms as herein providing second parties shall give first party six months written notice before the expiration of said base period of second parties' intention to renew same and unless parties herein mutually agree upon the rental for said renewal period within 30 days, after second parties notify first party of their intention to renew, then second parties have the privilege of giving up or terminating this lease at the end of five years and nine months base period."

The lease was not assigned to the buyer and could not have been assigned without written consent of the lessor, and seller being the only one who could have exercised the option to renew for an additional five years. The rental payments were made by the buyer to seller, and so far as the buyer was concerned not to the lessor.

The conditional sales contract called for payment of $10,000, payable $1,000 down and $1,209.80 on April 15, 1959, $1,209.80 on May 15, 1959, and thereafter $209.80 monthly. In addition, the buyer paid $400 per month rental to the seller, who in turn paid the lessor.

The buyer made the payments through January 15, 1960, in the total amount of $5,098. On January 29, 1960, the buyer was served with eviction papers by lessor Kohn. The "option" in the lease heretofore quoted providing for renewal of the lease had not been exercised by the seller. Th trial court found that at all times the seller had continued the relation of landlord and tenant with lessor Kohn.

Subsequent to the termination of the lease between Kohn and the seller, because of the eviction notice being served on the buyer, and in order to protect their interests and investment, the buyer was compelled to make a new lease with Kohn

and to pay an increased rental in the amount of $75 per month. Prior to this, during November and December, 1959, the seller had demanded an increased rental from the buyer who refused to pay more.

After January 15, 1960, the buyer refused to make further payment to the seller. The seller filed a complaint, claiming a breach of contract in failure to make the payments provided. The amount sued for was $1,438.60, this being represented to be payments due in February, March, April, May, June, July and August of 1960, when the complaint was filed.

The same "conditional sale contract" had provided:

"It is further agreed that time is the essence of this contract that if purchasers default in making the payments or any payment thereof, * * * this contract shall be considered in default and the full amount remaining unpaid shall be immediately due and payable * * *."

The answer set up affirmative defenses which pleaded representations and warranties of the seller concerning the leasing of the premises which the buyer relied on. The affirmative defenses also contained other matters concerning offers of rescission, and that the agreement was unreasonable and unconscionable and invalid. It was also affirmatively alleged that by reason of the acts of the plaintiff seller, the defendant buyer was damaged in a sum in excess of the amount claimed by seller.

The seller moved to strike all of the affirmative defense or defenses. No effort was made to separately state and number. The entire gist of the motion to strike the affirmative defenses was that the allegations of the defendant buyer here, would, if proven, vary the terms of a written instrument. The motion was denied and the cause went to trial before the court sitting without a jury.

The court made findings of fact and conclusions of law, and judgment was entered which will be referred to later.

Following judgment, a motion to vacate the judgment was made and denied. This appeal followed.

The specifications of error, ten in number, are divided by the appellant into three parts. They are:

1. The pleadings.

2. Erroneous award of damages to defendant buyer.

3. Refusal of the court to set aside the judgment.

As to the pleadings, the gist of the motion to strike the affirmative defenses was that the allegations tended to vary the terms of a written contract. While the pleading in the affirmative defenses is certainly no model, we hold it sufficiently clear to comply with R.C.M.1947, § 93-401-13 which provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings.

"2. Where the validity of the agreement is the fact in dispute.

"But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in section 93-401-17, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties."

As related before the answer alleged mistake and imperfection of the writing by alleging that the lease recited in the agreement as being attached was not in fact attached (and significantly the lease was not even attached to the agreement as part of the complaint). The answer also alleged that the agreement was invalid. It seems clear that the answer

plead both exceptions to section 93-401-13. More than that, as even the appellant admits in his brief, the so-called "conditional sales contract" by its own recitals permeates extrinsic ambiguity. (For a somewhat similar situation, see Sathre v. Rolfe, 31 Mont. 85, 77 P. 431.)

We hold that as to the pleadings, appellants' specifications of error are without merit.

Next we shall consider the two divisions made by the appellant going to the judgment. In his motion to vacate the judgment, appellant attacked the judgment both as to: (1) damages not specifically plead nor evidence produced by defendant; and (2) in any event the judgment is uncertain as to amount.

First of all, while it is true that no cross-complaint was made nor for that matter any definitive language of "offset", the answer did plead that the buyer was damaged in an amount in excess of any balance due upon the contract sued upon, and, in the prayer for relief, prayed that the seller take nothing by reason of his complaint. Also, we have searched the record in vain for any objection by the seller going to evidence of damages. The evidence is clear and undisputed, and found by the trial court; that the seller could not assign the lease, did retain his status as tenant of the lessor, did accept rental payments from the buyer, did not renew the lease under his own theory of its meaning, and that the buyer was forced to negotiate her own lease at higher terms of $75 per month with no evidence of improvements having been made. All of these matters support the trial court's findings and since no objection was made to the introduction of the evidence, the pleadings are deemed amended to conform to the proof. Stevens v. Woodmen of the World, 105 Mont. 121, 71 P.2d 898; Baatz v. Noble, 105 Mont. 59, 69 P.2d 579.

Next, as to uncertainty in the judgment. The judgment recited:

"* * * the court found that the defendants [buyers] have

been damaged in an amount equal to $75 per month for a period of five years, and that the defendants are entitled to a credit against the purchase price of the hotel business which was the subject of this litigation, and any amount due * * * in the sum of $4,500; and that no sum is due to the plaintiffs from the defendants under and by virtue of the terms of said contract between plaintiffs and defendants until a sum equivalent to $75 per month with interest at six (6) per cent per annum from month to month remaining unpaid shall have been credited to defendants for the full period of five years, at the rate of $75 per month.

"NOW, THEREFORE, pursuant to law and the premises, it is hereby ORDERED, ADJUDGED AND DECREED, that the defendants have been damaged in the sum of $4,500.00, and that said damages shall be an off-set to any amount due plaintiffs under said Contract sued upon in the Second Amended Complaint and that the defendants shall be credited for said damages in full against any balance due on said Contract at the rate of $75 per month with interest at six (6) per cent per annum from month to month on the amount remaining unpaid, and the plaintiffs are not entitled to any amount under said Contract until such time as said off-set, together with accruing interest thereon, is fully credited to defendants."

First, by the very language of the contract asserted as a basis for complaint, if any amount was due and owing, the entire amount was due; that amount was fixed, and undisputed, i. e., the balance due or $4,902. The damages to the defendant buyer, caused by the seller, on the other hand, while in a sense accruing month by month, insofar as this transaction is concerned, are fixed for the period of the new lease. Appellant urges that because the new lease referred to contained a 90 day cancellation provision that such provision makes the term and extent of damages uncertain. We do not find, under the facts and circumstances of this case, that such a possibility

of future cancellation by a third party makes such an uncertainty as to void the judgment in its entirety. However, it is just as obvious under the findings supported by the evidence that the damages found will never equal the amount due to seller, that is, $4,500 is the ultimate amount due the buyer and $4,902 is the amount owed the seller, or a difference of $402 owing the seller.

In Miller v. Emerson, 120 Mont. 380, 381, 186 P.2d 220, this court said:

"We do not agree that because the award was $10 more than the evidence warranted, a new trial must be had. Section 9191, Revised Codes, [1921, now R.C.M. 1947, § 93-3909], provides: 'The court must, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect.' No substantial right of the defendant will be affected if we order the judgment modified by reducing it to the sum of $2,930. There is authority for thus modifying a judgment. Kane v. Oehler, 62 Mont. 417, 205 P. 245; Dietz v. Rabe, 65 Mont. 500, 211 P. 343; Callan v. Hample, 73 Mont. 321, 236 P. 550; Stagg v. Broadway Garage Co., 87 Mont. 254, 286 P. 415; Hinton v. Peterson, 118 Mont. 574, 169 P.2d 333."

 Here, while the amount is somewhat greater than $10 referred to in the Miller case, supra, the same reasoning applies. The amount of $402 under the findings of the district court, finding as it did the contract amount paid and unpaid, as well as the off-set of damages occasioned by the acts of the seller, is now due the seller. Therefore, we remand the cause with directions to modify the judgment by awarding a balance of $402 to the plaintiff in satisfaction of the balance due under the contract, each party to stand its own costs on this appeal. As thus modified, the judgment will be affirmed.

This disposes of the appeal, but in passing we note the motion to strike the bill of exceptions made by respondents. A

ruling on the motion could not change the results on the merits and thus we shall not consider it further.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and JOHN C. HARRISON, concur.