McBRIDE, Judge.
On the night of September 6, 1949 Can-dido Lopez sustained injuries from which he died as a result of being struck by an automobile owned and operated by Frank Gal-lardo on the State Highway which connects Delacroix Island in St. Bernard Parish with the City of New Orleans. The road is about 20 feet in width. Lopez was attempting a foot-crossing of the highway from the bayou side thereof to the gate of his front yard. Although the petition alleges that the accident occurred at approximately 8 o’clock p. m., the weight of the evidence is that the time was between 9 and 9:30 o’clock p. m. Lilly Silvera, widow of Candido Lopez, on behalf of herself and also on behalf of her four minor children, to whom she is natural tutrix, brought this suit against Gallardo, for $100,000; the case reaches us on her appeal from the judgment below dismissing her suit.
The negligence charged against defendant is that he was:
(1) Driving, at an excessive rate of speed,
(2) Not keeping a proper lookout,
(3) Not maintaining control’ of his car, and
(4) That he failed to warn pedestrians on the highway.
After setting forth a denial to the charges of negligence, the defendant .alleged in his answer that Lopez jumped or leaped directly into the path of the automobile, and that ■he did everything possible to avoid funning Lopez down. Alternatively, the plea is made that Lopez was guilty of contributory negligence in heedlessly attempting to cross the road notwithstanding the close proximity of the automobile.
The highway is locally known, as .the Delacroix Island Road. The accident happened near the village of Delacroix Island' on a gravelled or shelled strip, which has. a straight run of from 600 to 700 feet in the direction from which the Gallardo automobile came. The car was moving in the direction of New Orleans. On its south side the road is paralleled by a navigable bayou, between which and the edge of the road is a dirt shoulder approximately 2 feet wide. Where this shoulder of the road meets the bayou there is a steep drop to the water of the bayou, which at that point is about 8 feet deep. On the opposite or north side of the road is a small shallow drainage ditch with curving sides beyond which is soft or semi-marsh land, upon' which the inhabitants of the area have erected their homes. The. houses face the road and are built high off the ground as *17 a protection from high tides flowing in from the gulf.
The only persons witnessing the accident are Gallardo, one Gonzales who was riding in the Gallardo car seated beside the driver, and a Mrs. Silvera, the mother-in-law of Lopez. The latter, who appeared as a plaintiff witness, lived with the Lopez family in a small house, the shape of which bears resemblance to an inverted letter “L.” She claims that she was standing at the door of the kitchen (in the lateral portion of the house), located about 37 feet from the wire fence across the front of the Lopez property, and had a clear and unobstructed view of the road. Her attention was first attracted by the sound of the motor of a small boat operated by her son-in-law. She watched him moor the boat to. a wharf in the bayou and then ascend to the bank of the bayou and then attempt to walk across the road. From her testimony it appears that Lopez entered the road at a point to her left, which was also to the left of the fence gate, and that he walked across the road in a somewhat diagonal course. He was hit by the automobile which came from his right just as he was about 5 or 6 feet from the gate and was “knocked” a considerable distance. Mrs. Silvera did not see the automobile before it hit Lopez, and she described the accident as happening “like a lightning.” ,
Gallardo says that shortly before the accident he had “picked up” Gonzales at Delacroix Island and was taking him to his home. He maintains that he was driving 30' miles per hour and that when he reached a point in the road in front of the Lopez home, a man, who he afterwards learned was Lopez, leaped or ran in front of the automobile. Gallardo claims that the car was but a scant 10 or IS feet from the man when he first appeared in the road. His reaction was that he could not stop in time to avoid running the man down, so he accelerated his speed and swerved to the right in the hope that an accident would be averted. The maneuver was unavailing; the front part of the car struck Lopez and hurled him a distance of about 8 feet.
The testimony of Gallardo’s passenger, Gonzales, in every detail supports and corroborates Gallardo. Gonzales was emphatic that the automobile was but from 10 to IS feet away when Lopez dashed out in front of it. Gonzales said:
“We were coming along down the road — coming up the road. He shot right out in front of the car. He ran right in front of the car. Buddy swung to miss him. * * *
“ * * * He sort of jumped right in front of it. He ran off the road to try to miss him.”
Appellant concedes that Lopez negligently placed himself .in a precarious position in his endeavor to traverse the road notwithstanding the oncoming car, but the argument is advanced on' behalf of appellant that she and her children are nevertheless entitled to a recovery, because Gal-lardo was inattentive and not keeping a proper lookout and should have discovered the peril in which Lopez had placed himself in time to have avoided the accident. Appellant’s case' is presented as resting solely on the doctrine of the last clear chance as extended by the doctrines of discovered peril and apparent peril by the cases of Rottman v. Beverly, 183 La. 947, 165 So. 153, and Jackson v. Cook, 189 La. 860, 181 So. 195. In Fontenot v. Freudenstein, 199 So. 677, decided by us, the doctrine of apparent peril was also discussed, but plaintiff’s counsel have not cited this case. We are also cited to several later cases, in which there were similar holdings.
It is pertinent and most material therefore that we ascertain if Gallardo actually did discover, or should have discovered Lopez’s perilous position in time to take efficient steps to avoid the accident. Under our established jurisprudence, it is the duty of a motorist to use vigilance and care, as well as to keep a sharp lookout for pedestrians on highways, and if a motorist observes or should have observed the pedestrian in time to avoid the accident and fails to do so, then he must be held to be liable under the doctrines enunciated by the cited cases. Great stress is laid on some of Gonzales’s testimony, which counsel importune us to interpret as showing that Lopez was standing on the edge of the road when the *18 automobile was 70 or 75 feet away from ■him, and that Gallardo saw Lopez or should have seen him from that distance which afforded a reasonable opportunity to prevent the running down of Lopez. After carefully examining the testimony in question, we believe the only fair import that can be given to it is that Gonzales observed what he took to be the figure of a man standing on the edge of the road when the car was about 70 or 75 feet away. The trial judge interrogated the witness on this feature of the case and Gonzales’s response to his questions was that he was not sure whether it was a man he saw. He could not say — if a man it was — that the figure was that of Lopez.
Gallardo denies that he noticed the figure that looked like a man to Gonzales, but even assuming that Lopez was on the edge of the road and that Gallardo saw him standing there, Gallardo was under no legal obligation of anticipating that Lopez would run out into the roadway in front of the car. As every motorist knows, many pedestrians stand along the roadsides. The operators of vehicles are fully justified in believing that such pedestrians will remain in places of safety and not dart out into the highway in the paths of moving automobiles. Common sense dictates such a rule. Of course, it goes without saying that there may be exceptions where young children, inebriates, and other incompetents are concerned.
The rate of speed at which Gallardo was traveling is a controverted issue. Appellant’s contention is that the automobile was going at such a “terrific” speed that Gallardo was inhibited from taking such steps as were necessary to avoid injury to Lopez. Gallardo and Gonzales both fixed the speed of the car at about 30 miles per hour. Although many witnesses testified for plaintiff, none could give a concrete estimation of the speed of the Gallardo car, as none of them saw it before the accident. In respect to the charge that Gallardo was speeding, appellant confidently relies on certain factors upon which we shall now comment. We are referred to the testimony of Martin Alphonso and appellant claims it bears out the assertion that the automobile was traveling, at a high and excessive rate of speed. This witness testified in substance that on the night of the accident he happened to be in the bar of Adam Nunez in Violet where he met Gallardo, who was with two other men, and that Gallardo left the establishment 5 or 6 minutes before he did. Alphonso claims that he drove toward Delacroix Island at an average speed of between 50 and 60 miles per hour on the paved portion of the highway and at about 30 miles per hour where the highway was bad, and that before reaching Delacroix Island he came upon the Gallardo automobile in front of the Lopez home after the accident had happened.
The evidence shows that earlier in the evening Gallardo had undertaken to drive John Campo and Landry Melerine from Delacroix Island to the town of Violet, which is between Delacroix Island and New Orleans. After Gallardo left Nunez’s place, he drove Campo and Melerine to Delacroix Island, and .after they alighted from the car he agreed to take Gonzales to his home and was driving up from the Island when the accident happened. Appellant’s argument is that if Gallardo left the Nunez place 5 or 6 minutes before Alphonso did and had taken Campo and Mel-erine all the way to Delacroix Island, then picked up Gonzales, and had traveled back as far as the Lopez home, that he must have been moving at an excessive rate of speed, particularly in view of the fact that Alphonso, who had driven over the paved portion of the highway at between 50 and 60 miles per hour and at the rate of 30 miles per hour on the bad portions of the road, had not yet reached Delacroix Island.
The trial judge was not impressed with Alphonso’s testimony, nor does it favorably impress us. Alphonso upon seeing Gallardo in the Nunez bar offered to buy him a drink, and that after consuming a bottled soft beverage, Gallardo left to return Cam-po • and Melerine to Delacroix Island. There is one glaring weakness in Alphonso’s evidencé which cannot go unnoticed; Although on his direct examination he claims that he left the bar about 5 or 6 minutes after Gallardo’s departure, it was *19 brought out on cross-examination that he was not sure as to the period of time which elapsed between the departure of Gallardo and his own. Violet is about 17 miles north of Delacroix Island, and it is incredible to believe that if Gallardo left Violet only 5 or 6 minutes ahead of Alphonso he coúld have made the trip to Delacroix Island and then double back in the direction of Violet and become involved in the accident all before Alphonso’s car reached the Lopez home on its way to the Island.
Appellant produced several other witnesses in an effort to make out her charge that Gallardo was speeding, but none of them saw the automobile in motion, and their testimony carries no weight. For instance, Clarence Melerine, a cousin of appellant, who operates a grocery store about 160 feet from the Lopez home, heard a car “roaring” past his place, and immediately afterward there came the sound of an impact. Casimer Melerine, appellant’s uncle, who lives about a block away, heard a car moving at a rapid rate of speed. During direct examination the witness gave no estimate of the speed at which he thought the car was moving, but on cross-examination he “'figured” that 70 miles per hour was its minimum speed. It is interesting to note that he says the car “passed like lightning,” which was the same expression used by Mrs. Silvera, who claimed to have witnessed the accident from her kitchen door.
Certain of plaintiff’s witnesses also gave their versions as to how far Lopez was catapulted. The composite of their testimony is that he was found in the roadside ditch about 40 or 45 feet removed from the point at which he was struck. Arnold Rodriguez testified that within 20 minutes after the accident, with the aid of a flashlight, he backtracked the path of Gallardo's vehicle from where it came to rest in his yard to the farthest point at which skid marks were discernible in the road. Rodriguez maintained that he found skid marks for a distance of from 70 to 75 feet beyond the point of impact.
Rodriguez, as well as other plaintiff witnesses, also told how the car cajne to a stop in the Rodriguez yard after knocking over three railroad ties utilized as fence posts, which were stuck in the ground for a depth of 1 foot.
As against the theories advanced that Gallardo was speeding stands the uncontro-verted evidence of Gallardo and Gonzales that the car was being operated at about 30 miles per hour. Mrs. Silvera did not see the car before the accident notwithstanding that before it hit Lopez it passed by the door in which she stood. The trial judge predicated his judgment on the testimony of defendant and his witness and pointed out in his reasons for judgment that the evidence given by the plaintiff witnesses should be discounted for the reason that practically all of them are relatives by blood or affinity of Lopez or the plaintiff. He particularly mentioned that he could not seriously accept Rodriguez’s statements. The fact that the car traveled for some distance into the Rodriguez yard is readily understandable. Gallardo upon seeing Lopez dash into the road accelerated his speed and swerved to the right to avoid him, as it was impossible to bring the car to a timely stop. It seems to us that this was the only sane course Gallardo could pursue in light of the existing circumstances, for if the car had been veered to the left, it would have run into the bayou. The uprooting of the fence posts is of no particular significance, bp-cause it was shown that the houses are built on soft or semi-marsh land and undoubtedly the posts were not too firmly embedded in the-ground.
In order for appellant to make out a successful case, it was incumbent upon her to prove conclusively and affirmatively that the defendant actually discovered or should have discovered Lopez in time to prevent the accident. The defendant’s evidence , i$ convincing that the headlights were illuminated and that the car was traveling at a reasonable rate of speed and under proper control. The statements of the two occupants ■ of the car that 'Lopez ran into the road are borne out to a great extent by plaintiff’s only eye witness. Mrs. Silvera mentioned that Lopez walked into the road, and that “when he got about the middle of 'the road he started-walking faster.” Under the circumstances, as wé see them, we cannot say that the last clear chance for *20 averting the accident was with defendant. The accident was unavoidable.
Therefore, the judgment appealed from is affirmed.
Affirmed.