ARTHUR D. SORRELS, Plaintiff and Appellant, v. MRS. FRANK M. RYAN, Defendant and Respondent.

No. 9294.
Submitted November 12, 1954. Decided March 9, 1955.
As Amended March 25, 1955. Rehearing Denied March 31, 1955.
281 Pac. (2d) 1028.

Messrs. Poore & Poore, Butte, for appellant.

Messrs. Corette, Smith & Dean, Butte, for respondent.

Mr. Robert A. Poore, Mr. Robert D. Corette and Mr. Allen R. McKenzie argued orally.

MR. JUSTICE ANGSTMAN:

This is an appeal by plaintiff from a judgment for defendant dismissing the action after a demurrer to plaintiff's complaint was sustained and plaintiff elected not to plead further.

The sole question involved is whether the complaint states facts sufficient to constitute a cause of action.

The complaint contains two causes of action. They seek damages for personal injuries sustained by plaintiff as a result of defendant driving her automobile against him as he was crossing a street in Butte about midway between street intersections.

Each cause of action is based upon the last clear chance doctrine. The only difference between the causes of action is that in one it is alleged that defendant saw plaintiff crossing the street and in the other that she should have seen him in the exercise of reasonable care in time to avoid the injury.

The accident happened on Front Street in Butte which runs in an easterly and westerly direction. Plaintiff was crossing the street from south to north on the evening of September 29, 1952, at about 9 o'clock p. m. The place where he was crossing was alleged to be well lighted and near the Northern Pacific Depot and between Wyoming Street and Utah Avenue.

Front Street is alleged to be approximately 60 feet wide and equally divided into lanes for east and west automobile traffic. In each cause of action it is alleged that before commencing to cross Front Street, plaintiff looked to see that there was no automobile traffic approaching him from the southwest on Front Street and that the traffic control signal at the intersection of Utah Avenue and Front Street controlling traffic at that intersection about one-half block to the east showed "red," that he thereupon carelessly and negligently assumed that his path northward across Front Street would be unaffected by auto-

mobile traffic while he crossed and that while crossing he negligently became oblivious to traffic which might approach him on Front Street from the east and continued to be thus oblivious to such traffic until he was struck by defendant; that defendant approached in her car from the east traveling in a westerly direction at a speed of about 15 miles per hour.

In the first cause of action it is alleged that defendant while not less than 90 feet from plaintiff saw him traversing the street; that defendant then knew, or in the exercise of reasonable care should have known from plaintiff's stooped posture and bearing that he was oblivious to traffic approaching him and might continue to walk across the street and into the path of defendant's approaching car; that although defendant saw plaintiff in his position of increasing peril she carelessly and negligently continued to drive her car southwesterly on Front Street toward him and suddenly ran upon him and struck him with great force "with the center of her car at a point about the middle of the lane for southwesterly bound traffic," causing the injuries complained of.

In the second cause of action it is alleged that defendant was negligent in not maintaining proper lookout; that had she used reasonable care in maintaining a proper lookout she would have seen plaintiff crossing Front Street ahead of her at not less than about 108 feet and continuously thereafter and that she would have had sufficient time to take steps to avoid striking plaintiff; that without maintaining proper lookout and without warning to plaintiff by blowing the horn or otherwise and without turning to her left though there was space of 33 feet on Front Street available to her, she struck him with the center of her car at about the middle of the southwesterly lane of traffic, causing the injuries complained of.

In considering the sufficiency of the complaint we keep in mind the rule that whatever is necessarily implied in or reasonably inferable from an allegation must be taken as directly alleged. Johnson v. Johnson, 92 Mont. 512, 15 Pac. (2d) 842; Gotzian & Co. v. Norris, 89 Mont. 307, 297 Pac. 489; Johnson

v. Herring, 89 Mont. 156, 295 Pac. 1100; Cramer v. Deschler Broom Factory, 79 Mont. 220, 255 Pac. 346; Buhler v. Loftus, 53 Mont. 546, 165 Pac. 601.

Likewise a good pleading does not require nor permit pleading of the evidence relied on. Johnson v. Johnson, supra; Mining Securities Co. v. Wall, 99 Mont. 596, 45 Pac. (2d) 302; First State Bank of Philipsburg v. Mussigbrod, 83 Mont. 68, 271 Pac. 695; Enterprise Sheet Metal Works v. Schendel, 63 Mont. 529, 208 Pac. 933.

Plaintiff relies largely on the case of Pollard v. Oregon Short Line Ry., 92 Mont. 119, 11 Pac. (2d) 271.

That case established the rule in this state that the doctrine of the last clear chance has application to a case not only where defendant actually saw plaintiff in a position of peril in time to avoid the injury by the exercise of reasonable care but also to a case where in the exercise of reasonable care he should or could have discovered plaintiff in his perilous position in time to avoid the injury. True that was a case where the injury arose at a railroad crossing where there was a clear legal duty on the part of those operating trains to keep a lookout.

The rule was reaffirmed in Armstrong v. Butte, A. & P. R., 110 Mont. 133, 99 Pac. (2d) 223, also a crossing case. Defendant takes the view that the complaint is deficient because it lacks allegation that plaintiff was crossing the street at a place where defendant had reason to anticipate his presence.

This contention cannot be sustained. Ordinary caution must be observed by drivers and pedestrians both at and between crossings. Carey v. Guest, 78 Mont. 415, 258 Pac. 236. Operators of motor vehicles are duty bound to keep a lookout for pedestrians and others using the streets. Johnson v. Herring, supra.

The fact that plaintiff was crossing the street between crossings and not at the crossing does not absolve defendant from the duty to exercise reasonable care to avoid injuring him. The doctrine of the last clear chance presupposes negligence on the part of plaintiff and even though his negligence may consist

of the violation of a city ordinance prohibiting the crossing of streets between intersections yet the doctrine applies. Mansperger v. Ehrnfield, 59 Ohio App. 74, 17 N. E. (2d) 271; Sanchez v. Gomez, 57 N. M. 383, 259 Pac. (2d) 346.

It is contended by defendant that plaintiff was able to avoid the accident by the exercise of reasonable care on his part by stopping. Here it is alleged in the first cause of action that plaintiff was oblivious to traffic which might approach him on Front Street and that defendant knew or should have known this from his stooped posture and bearing. Defendant should have known, if these allegations be true, that plaintiff would not stop walking. He was then unaware or unconscious of his danger. Compare Mihelich v. Butte, Elec. Ry., 85 Mont. 604, 622, 281 Pac. 540; McIntyre v. Northern Pac. Ry., 56 Mont. 43, 180 Pac. 971.

He was struck, according to the complaint, by the center of the car at about the middle of the southwesterly lane of traffic. This would be after he had crossed the center line of the street by about 15 feet. The complaint alleges that defendant maintained a speed of 15 miles per hour which was alleged to be excessive and failed to sound the horn, failed to reduce her speed, failed to swerve to the left to avoid plaintiff or to stop her car.

It is fairly inferable from the allegations of plaintiff's complaint that he stepped into the danger zone from westbound traffic the moment that he crossed the center line of the highway. He was struck after walking 15 feet past the center line. While it is not alleged how fast plaintiff was walking it is fair to assume that he did not exceed the usual gait of about three miles per hour. The automobile, which was traveling 15 miles per hour, in order to reach the point of impact would have traveled about 75 feet after plaintiff had stepped into its lane of travel. Under these circumstances it would be for the jury to say whether defendant had the last clear chance to avoid the injury.

We need not at this stage of the case determine whether plaintiff may recover.

We have not yet learned what the evidence will disclose. At ▉ this stage of the case we must presume that the allegations will be sustained by the evidence and "if there is a reasonable doubt as to the sufficiency of the allegations, the doubt must be resolved in favor of the complaint." Mihelich v. Butte Elec. Ry., supra. [85 Mont. 604, 281 Pac. 547.]

Here it is alleged in the first cause of action that defendant saw plaintiff traversing the street and knew or in the exercise of reasonable care should have known from plaintiff's stooped posture and bearing that he was oblivious to traffic approaching him and yet did nothing to attempt to avoid running into him.

If these allegations be sustained by evidence, then they make ▉ out a sufficient case for the jury under the doctrine of last clear chance.

Most of the cases quoted from in the dissenting opinion are inapplicable here. Some of them are cases where the injured person ran suddenly ahead of the oncoming vehicle where the driver had no opportunity to avoid the injury; some discuss the question of sufficiency of the evidence to warrant recovery which is premature so far as this case is concerned; others discuss the effect of contributory negligence, a question not involved here because the plaintiff readily admits that he was guilty of contributory negligence; still others discuss the question of the color of the clothing worn by plaintiff, making it difficult to distinguish him from the roadway, a question not involved here at this stage of the case because there is nothing in the complaint to indicate what character of clothing was worn by plaintiff. Such of the cases relied on in the dissenting opinion as have application to a statement of facts such as those alleged in the complaint support the conclusion we have reached.

Neither is there any merit to the suggestion in the dissenting opinion that plaintiff's complaint contains indirect and not direct allegations: The allegation is that defendant "knew or in the exercise of reasonable care should have known from plaintiff's stooped posture and bearing that he was oblivious to traf-

fic approaching him." That is a direct allegation of the essential matter of knowledge. It is immaterial that the knowledge came from circumstances indirectly alleged. Knowledge is what placed the duty on defendant to act to avoid the injury. The words "from plaintiff's stooped posture and bearing" may be disregarded as surplusage and still the complaint states facts sufficient under the last clear chance doctrine.

The court erred in sustaining the demurrer to the complaint as to the first cause of action and in entering judgment of dismissal.

As to the second cause of action, it was sufficient within the ruling in the Pollard and Armstrong cases except that there is no allegation that had defendant kept a proper lookout she would have discovered from plaintiff's stooped position and posture that he was unaware of the danger from the approaching automobile in time to avert the accident. But since such allegations appear in the first cause of action the court in the furtherance of justice should permit plaintiff to amend the second cause of action so as to incorporate such allegations in it. There is ample precedent for this procedure. 5 C. J. S., Appeal and Error, sec, 1936, page 1452 et seq.

The judgment is reversed and the cause remanded with directions to set aside the order sustaining the demurrer as to the first cause of action and to enter an order overruling the demurrer as to it and to proceed with the second cause of action as herein stated.

MR. JUSTICES ANDERSON and BOTTOMLY, concur.

MR. JUSTICE DAVIS, not participating.

MR. CHIEF JUSTICE ADAIR: (dissenting).

Front Street is a public street in the City of Butte, Montana. At the places here involved it runs generally northeast and southwest. The portion of such street used for the vehicular traffic thereon is about 60 feet wide and is equally divided into two

driving lanes. The southerly lane is for the eastbound vehicular traffic and the northerly lane is for the westbound traffic.

Utah Avenue and Wyoming Streets are parallel public streets in Butte which intersect Front Street at right angles; Utah Avenue being situate one block to the east of Wyoming Street.

At the time of his accident the plaintiff Arthur D. Sorrells, a pedestrian, was crossing from the south to the north side of Front Street at a point in the middle of the block that is bounded on the west by Wyoming Street and on the east by Utah Avenue. There was and is no regular pedestrian crossing at the place where the accident occurred.

*Complaint.* Plaintiff's complaint sets forth two separately stated causes of action. In his first cause of action plaintiff, *inter alia,* alleges:

"1. That on or about September 29, 1952, about 9:00 o'clock p. m., plaintiff [Sorrells] on foot approached said Front Street for the purpose of crossing said street at a particularly well lighted point about midway between said intersections * * *; *that before commencing to walk across said Front Street the plaintiff loked to see that there was no automobile traffic approaching him from the southwest on said Front Street and that the traffic control signal controlling traffic at the intersection of Utah Avenue and Front Street about one-half block to the northeast showed 'red' for traffic approaching said intersection on Front Street from points northeast of said intersection;* that thereupon *plaintiff carelessly and negligently assumed that his path* northward across Front Street *would be unaffected by automobile traffic during the period of his passage and commenced walking directly across said Front Street, and* while so doing *negligently and carelessly became oblivious to traffic* which might approach him on Front Street from the northeast, *and continued to be oblivious to such traffic until he was struck by the defendant* as is hereinafter alleged.

"2. That at said time and place defendant was operating a Plymouth automobile in a southwesterly direction on Front Street at a speed of approximately 15 miles per hour approaching that

portion of Front Street which plaintiff was traversing. That the entire block on Front Street between said intersections was well lighted, and defendant, while still not less than ninety (90) feet from said plaintiff saw him traversing said street in a northerly direction; that defendant then knew, or in the exercise of reasonable care should have known from plaintiff's stooped posture and bearing that he was oblivious to traffic approaching him and might continue to walk across said street and so into the path of defendant's aproaching car; that although defendant saw the plaintiff in his position of increasing peril, she carelessly and negligently continued to drive her car southwesterly on Front Street toward him and suddenly ran full upon him and struck him with great force with the center of her car at a point about the middle of the lane for southwesterly bound traffic, hurling him ahead of her car and to the pavement of the street and causing him extensive and permanent bodily injuries more particularly described hereinafter.

"3. That the defendant was careless and negligent in the following particulars after discovering the plaintiff in his position of peril, to-wit:

"(a) Defendant carelessly and negligently failed to realize that the plaintiff was, or could be, oblivious to defendant's approaching automobile and that in the space of not less than ninety (90) feet available to her she was duty bound to warn him or drive around him or stop and so avoid driving full upon him.

"(b) Defendant carelessly and negligently failed to blow her horn or otherwise apprise the plaintiff of her approach.

"(c) Defendant carelessly and negligently maintained a fast and excessive speed, to-wit, approximately fifteen (15) miles per hour, after discovering the plaintiff in his position of peril, so that the time and distance thereafter remaining between plaintiff and defendant's approaching car grew less and less and the possibility of the plaintiff's being struck by defendant's car continuously increased up to and including the point where collision became inevitable and occurred.

"(d) Defendant carelessly and negligently failed to drive her car to her left and avoid and pass around plaintiff to the south although approximately thirty-three (33) feet of said Front Street were available to her to do so.

"(e) Defendant carelessly and negligently failed to stop her car and allow the plaintiff to walk past in front of her to a position of safety.

"4. That as a direct and proximate result of one or more of defendant's negligent acts and omissions aforesaid, plaintiff was struck with great force by defendant's car and hurled forward and to the pavement, whereby he suffered" the injuries of which plaintiff complains and describes. Emphasis supplied.

*Posture and Bearing.* There is no *direct* allegation in plaintiff's complaint that plaintiff was not an able-bodied man in the full possession of all his faculties at the time he met with the accident of which he here complains nor is there any *direct* allegation that plaintiff was then afflicted with any infirmity or disability whatever. Nowhere does plaintiff *directly* allege that there was anything noticeably peculiar or unusual about his appearance, posture, bearing or walk that would charge defendant or any other driver of a motor vehicle with any knowledge, actual or implied, of any infirmity or incapacity under which plaintiff then labored. However, in the above quoted second paragraph of his first cause of action plaintiff makes the *indirect* allegation that "from plaintiff's stooped posture and bearing" the defendant then knew or should have known that plaintiff "was oblivious to traffic approaching him and might continue to walk across said street and so into the path of defendant's approaching car." By such *indirect* averment the plaintiff suggests and infers that he advanced with "stooped posture and bearing" as he walked "into the path of defendant's approaching car."

"It is elemental that the pleader must allege all facts material to his cause of action *directly,* in ordinary and concise language, and with reasonable certainty." Emphasis supplied. State ex

rel. Toomey v. State Board of Examiners, 74 Mont. 1, at page 14, 238 Pac. 316, at page 322.

Plaintiff alleged that at the time of his claimed accident he was employed as a baggageman at an average monthly pay of $275. Had plaintiff intended to state that he was afflicted with any infirmity or disability such as caused him to assume a noticeably "stooped posture" or to present a noticeably abnormal or unusual appearance or "bearing" when walking he should have so alleged *directly* and not attempted to plead such claimed condition by mere *indirect* averment, innuendo and inference.

From plaintiff's above quoted *indirect* averments the majority of this court conclude that the defendant should have known from plaintiff's posture and bearing that plaintiff would not stop walking and that he "was then unaware or unconscious of his danger."

I respectfully submit that such conclusions so drawn from such *indirect* averments are erroneous and wholly unjustified. There is no presumption of law that a round-shouldered man "would not stop walking" nor that a pedestrian with a baggageman's stoop and bearing is indicative of the fact that such pedestrian is unaware or unconscious of his danger when proceeding in the nighttime at right angles across a busy public street through and in the path of oncoming motor vehicular traffic. There is no presumption that a pedestrian who walks erect with the bearing of a West Point graduate thereby demonstrates that he is aware and conscious of any and all danger that he may encounter while the posture and bearing of a stoop-shouldered pedestrian is indicative of the fact that he is wholly unaware or unconscious of any and all the dangers attendant upon his failure to either look or stop for oncoming vehicular traffic approaching at the moderate rate of 15 miles per hour and in the plain and unobstructed view of such pedestrian. Compare Saindon v. Lucero, 10 Cir., 187 F. (2d) 345.

In Reilly v. Dunnavant, 200 F. (2d) 213, 215, the United States Court of Appeals, 4th Circuit, said: "Since the negligence

of the defendant can be predicated only upon facts sufficient to justify the conclusion that he violated some legal duty owed to the plaintiff, it is necessary at the outset to discuss the nature and extent of that duty. * * * The motorist is bound to use reasonable care for the protection of pedestrians on the highway, and to proceed with such caution as the circumstances may require to avoid endangering them. It is also true that the pedestrian is required to exercise reasonable care for his own safety, and the motorist has a right to assume that such care will be employed. A motorist is not required to anticipate that a pedestrian, because of a mental infirmity, will be unable to meet the standards of conduct required of an ordinary person. Nor is the motorist's duty to one so afflicted greater than his duty to one in possession of all his faculties, unless he has notice of such incapacity and its enervating effects.

"This principle is aptly stated in 65 C. J. S., Negligence, sec. 12 page 401, Knowledge of Incapacity:

" 'In the absence of anything which should reasonably suggest such a condition, one is not required to anticipate that another may, for some reason, be unable to exercise ordinary care for his own safety, but *the duty to exercise special care with respect to a person, who is for any reason unable to take such care of himself as the normal person might, arises only where there is actual or imputed knowledge of the incapacity. Accordingly, negligence cannot be predicated on conduct which would have reached the standard of ordinary care with respect to an ordinary and normal person in the absence of any actual or imputed knowledge of any infirmity or incapacity of the person in question.*'

"In the instant case, the defendant had no previous knowledge of the plaintiff's incompetence, and certainly he had no opportunity to determine his mental condition in the short interval which elapsed between the plaintiff's coming into view and the collision. Consequently, the question of defendant's negligence must be considered in the light of the duty owed by a motorist

to a pedestrian *sui juris* and resolved on the basis of the state law defining such duty. * * *

"It is clearly the law * * * *that the operator of an automobile owes no duty to a person running across the highway at right angles until such time as that person has placed himself in a position of peril, and that such person has not assumed a perilous position until he enters the lane in which the motorist is traveling or gives some indication that he is heedless of the danger about him.* Consequently, the contention of the plaintiff that if the defendant had been keeping a proper lookout he could have seen the plaintiff sooner, is immaterial. Since the defendant here owed no greater duty to the plaintiff than he did to a person *sui juris,* he would have been justified in assuming that the plaintiff was aware of his approach and would not attempt to cross defendant's line of travel in close proximity to his automobile." Emphasis supplied.

While the driver who sees a pedestrian in peril must take all reasonable measures to avoid running him down, nevertheless the driver while travelling in the middle of a city block and where there are no established crossings is not required to move only at a creep and stop regularly for any and all pedestrians who may suddenly decide to leave a place of safety and recklessly dash into the stream of oncoming vehicular traffic, for the duty of both the pedestrian and the driver is reciprocal. The standard of care does not shift it,—it is one of reasonable care on both parties at all times.

The driver has a right to assume that the pedestrian will exercise ordinary care for his own safety and the pedestrian has the right to assume that the driver will use ordinary care for his protection.

"A motorist is not obligated to stop his motor vehicle every time a person gets so close to it that it is possible for a person to walk into it." Laurinat v. Giery, 1953, 157 Neb. 681, 61 N. W. (2d) 251, 255.

The driver of a motor vehicle is not an insurer of the lives or safety of pedestrians who may happen to be crossing a public

street midway between plainly marked regularly established intersectional crossings where all traffic is directed and controlled by automatically operated traffic lights and signals and, in the event of an unavoidable accident resulting in injury to such a pedestrian occasioned by a moving automobile, the person responsible for the operation thereof is not liable. The penal law excepts from its operation persons who committed the act or made the omission charged by or through an unavoidable accident and with no evil design, intention or culpable negligence. R. C. M. 1947, sec. 94-201, subd. 6.

The mere happening of an accident, standing alone, is not proof of negligence. Baatz v. Noble, 105 Mont. 59, 69 Pac. (2d) 579; State v. Bast, 116 Mont. 329, 338, 151 Pac. (2d) 1009.

Silvera v. Gallardo, La. App. 1953, 63 So. (2d) 15, 19, was a suit by Mrs. Silvera, a widow, to recover for the death of one Lopez, then her husband, resulting from being struck by an automobile driven by defendant. The plaintiff relied upon the doctrine of last clear chance and the appeal was from a judgment of dismissal entered in the trial court. In affirming such judgment the appellate court said:

"In order for appellant to make out a successful case, it was incumbent upon her to prove conclusively and affirmatively that the defendant actually discovered or should have discovered Lopez in time to prevent the accident. The defendant's evidence is convincing that the headlights were illuminated and that the car was traveling at a reasonable rate of speed and under proper control. The statements of the two occupants of the car that Lopez ran into the road are borne out to a great extent by plaintiff's only eye witness. Mrs. Silvera mentioned that Lopez walked into the road, and that 'when we got about the middle of the road he started walking faster.' Under the circumstances, as we see them, we cannot say that the last clear chance for averting the accident was with the defendant. The accident was unavoidable."

In Bagala v. Kimble, 1954, 225 La. 943, 74 So. (2d) 172, at pages 177, 178, it is said:

"The reading of the record clearly demonstrates that Kimble was faced with a sudden emergency, and when he discovered the peril in which the deceased had placed himself by trying to get across the road, it was too late for the driver to avoid the accident. * * * Plaintiffs have failed to show that the accident might have been avoided by the exercise of ordinary care on the part of the driver after the danger was discovered by him. Therefore, plaintiffs are not entitled to recover. [Citing cases.]

"Plaintiffs invoke the doctrine of last clear chance. In the suit of Bergeron v. Dept. of Highways, 221 La. 595, 60 So. (2d) 4, 8, an exhaustive review was made relating to the jurisprudence applicable to that doctrine, and we are of the opinion that what we said there is appropriate here:

" 'The rule of "the last clear chance" or "discovered peril" applies to both parties who are involved in an accident. In 38 Am. Jur. Negligence, Sec. 227, that thought is expressed as follows: "As graphically stated by some authorities, the doctrine of discovered peril is a two-edged sword, applicable equally to the rights of a defendant and those of a plaintiff." Under the facts of this case it was the bicycle rider who had the better opportunity to observe the situation and apprehend the danger before it became imminent. His opportunity came as late, if not later than that of the truck driver, to avoid the accident; he had the last clear chance and is not in a position to invoke its provisions against the defendants.'

"The deceased was contributorily negligent. Such negligence precludes plaintiffs' recovering damages."

In Saindon v. Lucero, 1951, 187 F (2d) 345, at pages 346, 347, certiorari denied, 342 U. S. 824, 72 S. Ct. 43, 96 L. Ed. 623, the United States Court of Appeals, 10th Circuit, said: "Generally it has been said that contributory negligence is the neglect of the duty imposed upon a person to exercise ordinary care for his own protection and safety which is a legally contributing cause of an injury. [Citing authorities.] In determining whether an injured person has been guilty of contributory negligence the standard of conduct to which he must conform is that of a

reasonably prudent man under like circumstances. Restatement, Torts, page 464. The reasonably prudent person will be presumed to possess those qualities of attention and perception which are possessed by mankind in general. [Citing case.] If a person, by his own actions, subjects himself unnecessarily to danger which should have been anticipated and is injured thereby, he is guilty of contributory negligence and may not recover for his injuries. [Citing cases.]

''Ordinarily where the evidence is such that reasonable men may differ as to whether there was contributory negligence on the part of the injured person, it is a jury question. [Citing cases.] If, however, the facts are not in dispute and the inferences to be drawn therefrom are plain and lead to only one reasonable conclusion, then it is the duty of the court to determine the question as a matter of law. [Citing cases.] Ordinary care, of course, depends upon the facts and circumstances of each particular case. * * * *A pedestrian at night is in a position to see oncoming automobiles at a great distance.* The drivers of the automobiles may see him only within the range of their lights, but the ability of drivers to observe a pedestrian even within the range of their lights may be affected by such conditions as lights from other automobiles and the color of clothing worn by a pedestrian which blends into the color of the pavement.

*''We think that the deceased failed to exercise the simplest precaution for his own protection when he placed himself upon a main traveled highway in the nighttime at a place where pedestrians were not expected to be, with automobiles coming from either direction, and by moving quickly in front of one of them whereby he was struck and killed. He was required to make reasonable use of his faculties of sight, hearing and intelligence to discover dangers which under the circumstances should have been expected.* In F. W. Woolworth Co. v. Davis [10 Cir.], 41 F. (2d) [342] at page 349, supra, this court said: 'We conclude that the general and correct rule is, at least in the absence of any present assurance of safety, *a plaintiff may not recover if the use of his senses, in the ordinary way, would have prevent-*

*ed the injury.'* [Citing cases.] Under the conditions here, the conduct of the deceased falls short of standards to which a reasonable person should conform to protect himself from injury, and such conduct was a legally contributing cause of his injuries and therefore a recovery is barred. [Citing numerous cases.]'' Emphasis supplied.

In Barlow v. Lowrey, 143 Me. 214, 59 A. (2d) 702, at page 705, it is said: ''It is well known that if the highway pedestrian is not dressed in bright clothing and walks without a light, it is often impossible for him to be distinguished after dark, when beyond the distinct range of headlights. The hazard of the highway becomes at certain times, and under some circumstances, a suicidal peril. *Due care on the part of the night highway pedestrian may demand that he frequently look for and listen for approaching danger and, if necessary, to promptly leave the way entirely free for motor traffic.* * * *

''The 'doctrine of the last clear chance,' or 'the doctrine of discovered peril,' is recognized * * * and may or may not be applicable in negligence cases, depending on the circumstances. *It applies after defendant has become, or should become, aware that the plaintiff is in a position of peril, and that the plaintiff cannot reasonably escape in the exercise of due care, while the defendant has the opportunity, by exercise of reasonable care, to avoid injury.* The doctrine of last clear chance is applicable where the negligent acts of the two parties are not concurrent. The negligence of the plaintiff has ceased, or is too remote. The negligence of the defendant is the last negligence, and is the proximate cause. It is the *last* chance, and it must be the last *clear* chance. *It cannot be invoked if the plaintiff's own act is the last negligent act, or if the plaintiff's own negligence is actively concurring.* [Citing authorities.] If the plaintiff can withdraw from the zone of danger, his failure to do so may be continuing negligence. *The plaintiff sometimes has 'the last clear chance' to avoid the accident.* [Citing case.]'' Emphasis supplied.

In Owens v. United States, 1952, 194 F. (2d) 246, 247, 248, the United States Court of Appeals, 10th Circuit, speaking

through Chief Judge Orie L. Phillips, said: *"A pedestrian who attempts to cross a street at a point other than an intersection or a designated cross-walk must exercise a greater degree of care for his own safety than he would if he were attempting to cross at an intersection or a designated cross-walk. He must do more than look to the left or the right before he starts to cross the street. He must remain continually vigilant for approaching vehicles during the entire time he is crossing the street.* \* \* \*

"Mrs. Owens asserts that she was entitled to recover under the doctrine of the last clear chance. \* \* \*

"To bring a case within the doctrine of last clear chance under the Colorado decisions, *there must be more than a possibility of avoiding the accident; there must be a clear chance to do so."* Emphasis supplied.

In Domeski v. Atlantic Refining Co., 202 Md. 562, 97 A. (2d) 313, at page 316, it is said: "It is also perfectly clear that the doctrine of last chance cannot be applied in this case. In an action for damages a plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant knew of the plaintiff's situation, and realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff. 2 Restatement, Torts, sec. 480; Jackson v. Forwood, 186 Md. 379, 387, 47 A. (2d) 81."

In Flowers v. Morris, La. App., 43 So. (2d) 917, at pages 919, 920, it is said: "Young Flowers, in crossing the highway, stepped from the darkness of the left-hand lane of the highway into the beam of the headlights at a time when the automobile was in such close proximity as to render it impossible for the driver to bring it to a halt.

"We not only find defendant free of negligence under the established facts, but we are firm in the conviction that the contributory negligence of young Flowers was the sole, proximate

and immediate cause of the unfortunate accident. The boy certainly had every opportunity to observe the rapid approach of defendant's automobile and his reaction in the face of a suddenly discovered danger is clear proof of his negligence and carelessness in attempting to negotiate the crossing of a main highway without observing proper and reasonable precautions.

"With due consideration of the authorities cited by plaintiff's counsel, we do not find that this is a case for the application of the now well established doctrine of discovered peril. The facts which we have attempted to set forth above do not indicate that defendant could or should have reasonably been expected to observe any imminent peril. It is apparent that young Flowers was not in peril until the moment he left the safety of the untraveled lane of the highway and placed himself in the path of the approaching car, and clearly the time element at such instant would not admit of the application of the legal responsibility flowing from the discovered peril doctrine as against the defendant."

In Parks v. Airline Motor Coaches, 145 Tex. 44, 193 S. W. (2d) 967, at pages 969, 970, it is said: "The rule for allowing recovery of damages under the doctrine of discovered peril is exacting. * * * The sole question for determination is whether there is evidence that the driver of the bus actually discovered the perilous position of the deceased in time to have avoided striking him, by the use of all the means at his command, consistent with the safety of himself, his bus, and his passengers. The burden was upon the plaintiff to establish this fact. That the driver was guilty of violating those humane principles will neither be imputed nor presumed, but such guilt must be proved by competent evidence. In order to sustain a recovery, it must be shown that the driver actually discovered deceased and realized his perilous position in time to have averted the injury. If this is not done, no basis for recovery is established. [Citing cases.]

"*When the driver of the bus saw Parks walking up toward the highway, he had a right to presume that Parks would not negligently go upon the highway in the path of the bus.* [Cit-

ing case.] *The driver can not be said to have been guilty of negligence,* in so far as the doctrine of discovered peril is concerned, *unless he knew that Parks was going to attempt to cross the highway in the path of the bus, and thus place himself in a position of peril.* [Citing case.] When Parks stopped or hesitated some three feet from the highway, such action was in harmony with the presumption that he would not do the negligent act of placing himself upon the highway in the path of the bus. *Being on foot, it was within Parks' power to stop at any step, and the driver had the right to presume, under the facts of this case, that he would not place himself in a perilous position.*

"However, when Parks started forward again and placed his foot upon the highway, without looking in the direction of the oncoming bus, there were circumstances sufficient to apprize a person of ordinary prudence that Parks was unobservant of the danger of his course and position; and the duty devolved upon the driver of the bus, after the discovery of such fact, to exercise ordinary care in the use of all the means at his command, consistent with the safety of himself, his bus, and his passengers, to avoid injuring Parks. But this discovery and realization of the perilous position of Parks, in order to constitute negligence on the part of the driver of the bus, must have been *in time* for the driver to have avoided the injury by the use of ordinary care. When Parks moved forward from his position three feet from the highway, the bus was but 20 feet away, traveling at a minimum of 25 miles per hour, or approximately 37 feet per second, and therefore the driver had actually less than a second in which to act to avert the accident.

"Discovery *in time* is one of the essential elements in the establishment of liability under discovered peril. [Citing cases.] In this case there is not sufficient evidence to raise the issue of discovered peril, and there is no evidence that the driver of the bus was put on notice of the perilous position of Parks *in time to have averted the injury.*"

In Ralston v. Hewitson, 82 Cal. App. (2d) 143, 185 Pac. (2d) 644, 645, in affirming a judgment for the defendant the court

quoted with approval from the case of Poncino v. Reid-Murdock & Co., 136 Cal. App. 223, 28 Pac. (2d) 932, as follows: " 'In other words, it is not enough to relieve a plaintiff of his own negligence that the defendant may have had *a chance* to avoid the accident, but defendant must have had the *last chance* and also had a *clear* chance to do so by the exercise of *ordinary* care. That he should have had the *last chance* implies that his chance to avoid the accident must have come later in point of time than any similar chance on the part of the injured person. That he should have had a *clear chance* implies that he must have had more than a *bare possible chance* to avoid an unexpected peril created practically simultaneously with the happening of the accident by the negligence of the injured party.' "

*Before "commencing to walk."* In the first paragraph of his first cause of action plaintiff alleged that he looked *"before* commencing to walk across said Front Street."

Plaintiff alleged first that he looked to his left or westerly in the direction of the Wyoming Street intersection "to see that there was no automibile traffic approaching him from" that direction.

Plaintiff alleged next that *before* commencing to walk across said street he looked to his right or easterly in the direction of the Utah Avenue intersection, "to see * * * that the traffic control signal controlling traffic at the intersection of Utah Avenue and Front Street about one-half block to the northeast showed 'red' for traffic approaching said intersection on Front Street from points northeast of said intersection."

Neither of these looks so taken while plaintiff was in a place of safety and *before* he commenced to walk across said street could have revealed the presence or approach of defendant's automobile for obvious reasons. First, defendant's automobile did not approach plaintiff from the west, i. e., from the direction of the intersection of Wyoming and Front Streets. Second, defendant's automobile did not crash the traffic control signal located at the intersection of Utah Avenue and Front Street being about one-half block easterly from the point where

plaintiff has assayed to cross Front Street. Third, at the time plaintiff observed that such control signal showed "red" for traffic approaching the Butte Avenue-Front Street intersec-section "from points northeast of said intersection" defendant's automobile, traveling westerly on Front Street, apparently had already proceeded through and beyond such intersection and was across and to the west of Butte Avenue and therefore not in or a part of the "traffic approaching said intersection * * * from points northeast of said intersection." Fourth, said control signal did not control or affect vehicular traffic on Front Street that had already crossed said intersection and that had proceeded beyond and westerly from Butte Avenue. Fifth, whether the control signal so located one-half block easterly from the point where plaintiff had assayed to cross Front Street showed red, green or amber was and is wholly immaterial for the signal did not control the movements of either plaintiff or defendant and it could not reveal nor indicate the approach of defendant's automobile then being driven at some point westerly from the Butte Avenue-Front Street intersection and easterly from the spot at about the middle of the north driving lane where plaintiff alleges he was struck by defendant's automobile.

While plaintiff did *directly* allege that he "looked to see that there was no automobile traffic approaching him from the southwest on said Front Street," yet it must be remembered that defendant's automobile was no part of such eastbound traffic and also that plaintiff wholly failed, neglected and omitted to allege that he at any time looked to see that there was no automobile traffic approaching him from the northeast on said Front Street being the direction from which defendant's automobile approached plaintiff and the direction in which plaintiff was required to look to discover or observe the approach of defendant's car.

*After "commencing to walk."* Nowhere does plaintiff allege that *after* "commencing to walk across said Front Street" he either looked for or gave any heed whatever to the automobile traffic approaching him from the east or northeast on said Front

Street being the direction from which he alleged defendant's automobile came.

In the exercise of ordinary care plaintiff was required to look for such westbound vehicular traffic in the north driving lane on Front Street not only *before* commencing to walk said traffic lane but to also look for such approaching traffic *after* commencing to walk and *while and during* the time he was walking across and through such north driving lane and this he negligently and carelessly failed and omitted to do.

*Contributory Negligence.* Plaintiff's pleading shows that from the time he left a place of safety to the south of the two driving lanes "thereupon plaintiff carelessly and negligently assumed his path northward across Front Street would be unaffected by automobile traffic during the period of his passage and commenced walking directly across said Front Street, and while so doing negligently and carelessly became oblivious to traffic which might approach him on Front Street from the northeast, and continued to be oblivious to such traffic until he was struck by the defendant * * *."

The admitted carelessness and negligence on the part of the plaintiff so pleaded continued without interruption from the time plaintiff left his place of safety without and beyond the two driving lanes to the very instant of the impact with defendant's automobile during all of which time plaintiff carelessly and negligently failed and omitted to stop, look, listen or take any precaution whatever for his own safety or for that of others including the defendant. Thus was plaintiff's own admitted continuing negligence a proximate cause of the harm that came to him.

Not only are the averments of his complaint wholly insufficient to state a cause of action under the doctrine of last clear chance or otherwise but plaintiff's pleading affirmatively shows that he was guilty of contributory negligence from the time he commenced walking across Front Street to the instant that he walked into the path of and collided with defendant's oncom-

ing automobile thereby sustaining the injuries of which he here complains.

Such negligence on the part of plaintiff so affirmatively pleaded by him and continuing without interruption from the time he commenced walking across the two driving lanes on Front Street to the very instant of the impact with defendant's car in the middle of the north driving lane was a proximate cause of plaintiff's injury which precludes and bars recovery herein.

Matteson v. Southern Pac. Co., 1906, 6 Cal. App. 318, 326, 92 Pac. 101, 105, holds that the last clear chance rule can never apply where the negligence of the injured party continued up to the very moment of the injury and was a contributing and efficient cause thereof.

In O'Farrell v. Andrus, 1927, 86 Cal. App. 474, 260 Pac. 957, at page 961, it is said: "If defendant alone was guilty of negligence which was the proximate cause of the injury, plaintiff is entitled to the verdict; but if plaintiff was also guilty of negligence which proximately contributed to his injury, defendant is entitled to the verdict."

In Young v. Carlson, Cal. App. 1954, 276 Pac. (2d) 23, at pages 27-28, it is said: "No doubt the doctrine of last clear chance has been greatly expanded, and properly so, in recent years. However, there is still some vitality left in the doctrine of contributory negligence proximately contributing to the injury. The doctrine of last clear chance cannot operate in the absence of evidence that defendant 'must have seen' the other vehicle in time to have avoided the accident. Evidence that defendant could have seen the vehicle is not sufficient. That is this case." Also see Sparks v. Redinger, Cal. 1955, 279 Pac. (2d) 971.

Accordingly I dissent to the majority opinion. Upon the authorities above cited and for the reasons stated the judgment for the defendant so entered in the district court is correct and it ought to be affirmed.

On Motion for Rehearing.

PER CURIAM.

In defendant's petition for rehearing it is said:

"* * * The complaint clearly alleges that this street was 60 feet wide. In each cause of action in the complaint it is alleged that the defendant had 33 feet within which to turn to the left and avoid and pass around the plaintiff. This clearly means, of course, that the plaintiff was only 3 feet past the center line of the street. The majority has made the assumption 'he was struck after walking 15 feet past the center line'. On the basis of this computation the Court has estimated the gait in walking and has determined that the automobile must have traveled about 75 feet after plaintiff had stepped into its lane of traffic. These computations and assumptions are entirely improper and incorrect; it appears that at most the plaintiff could have taken only two steps into opposite side of the center of the street. On the basis of traveling 3 feet only past the center line the plaintiff entered a zone of peril too late for the defendant to stop and avoid the injury. Hence, there was no Last Clear Chance available to the defendant to avoid the accident.

"It seems more than strange that the Court would enter into the above computation directly contrary to the allegations of the complaint itself and at the same time state otherwise in the opinion that questions as to the sufficiency of the evidence to warrant a recovery are premature.

"It also seems amazingly strange that the Court would make these computations directly contrary to the complaint and then as to the second cause of action permit an amendment to the effect that 'had defendant kept a proper lookout she would have discovered from plaintiff's stooped position and posture that he was unaware of the danger from the approaching automobile in time to avert the accident.' If the Court will merely look to that portion of the second cause of action in the plaintiff's complaint, it will find in sub-paragraph (d) of Paragraph 3 (T. 8) the allegation as to the 33 feet to the left which was

available for the defendant to drive her car around the plaintiff.

"We respectfully but firmly suggest to the Court that it has entirely disregarded the direct allegations of the plaintiff's complaint in the foregoing respects and that the matters should be reheard. * * *"

As we interpret the complaint, the 33 feet available to defendant within which to turn to the left and pass around plaintiff existed at a time when defendant was at a point still far enough away from plaintiff to make the turn and avoid the injury. The 33 feet cannot relate to plaintiff's location at the time of impact, because it was then too late to make the turn and avoid the injury. Paragraph 3 of the second cause of action by necessary inference, if not directly, shows that the 33 feet available to defendant to turn to the left existed when she was 40 or more feet from plaintiff. That paragraph in part reads:

"That during all of the period of time during which the defendant drove from within approximately 108 feet of the plaintiff to approximately 40 feet of him and during which period she should have seen the plaintiff, defendant was careless and negligent in the following particulars, to-wit: * * *

"(d) She carelessly and negligently failed to drive her car to her left and to the south and around the plaintiff, although approximately 33 feet of said Front Street were available to her."

The allegation in the complaint from which we locate plaintiff at the time of the impact is paragraph 2 of each cause of action, in which it is alleged that defendant "struck him with great force with the center of her car at a point about the middle" of the lane for southwesterly bound traffic. The entire street was alleged to be 60 feet wide. The north half of the street would thus be 30 feet wide. If plaintiff was struck at about the middle of the southwesterly bound lane of traffic, that would be as we have said in the original opinion after he had crossed the center line about 15 feet.

The computations made in the original opinion are not in conflict with, but are based upon, and in entire accord with, a direct allegation in the complaint. And this allegation is not in

conflict with the allegation respecting the 33 feet. The one located plaintiff at the time he was struck and the other when the automobile was still forty or more feet from him.

The petition for rehearing is denied.