MIKE MALLY, Plaintiff and Respondent, *v.* MARY ASANOVICH, Defendant and Appellant.

No. 11203.
Submitted January 12, 1967.  Decided January 26, 1967.
Rehearing denied February 1, 1967.
423 P.2d 294.

Poore, Poore, McKenzie & Roth, Allen R. McKenzie (argued), Butte, for appellant.

Thomas F. Joyce and John T. Prothero (argued), Butte, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the second judicial district of the State of Montana, in and for the County of Silver Bow, arising out of an automobile injury to a pedestrian.

Mike Mally, plaintiff in the cause below, suffered serious personal injuries when struck by an automobile driven by the appellant on Harrison Avenue in the City of Butte, Montana. Harrison Avenue is one of the city's busy thoroughfares generally running north and south and is a part of U. S. Highway No. 10. In the area where the accident occurred there are no cross-

walks. On the evening of September 10, 1964, Mike Mally left his home to make a phone call at a booth located about a block away. After making his call he followed a path south along Harrison Avenue for a block where he reached a place where the curbing ended and here he chose to recross the Avenue. Before crossing, going from west to east, Mally looked north and south to see what the traffic conditions were before crossing. Three cars were seen by Mr. Mally, one in the immediate area that went by him before he left the pathway, one to the north about three blocks away and one to the south about three blocks away. Thinking he had sufficient time to safely cross Harrison Avenue he testified as follows as to what happened as he crossed:

"Q. You looked in both directions, and then what did you do? A. I looked before I started across the road. I kept going, I went in kind of a diagonal position towards my house.

"Q. What happened then? A. I kept walking, right from diagonally right straight towards my house and I got struck. And that was on the other side of the white line, in the center of the line.

"Q. The center line? A. The center line right.

"Q. The other side of the center line? A. That would be on the west side of the center line?"

Concerning what he remembered just before being hit Mally testified that he saw no car, no lights, heard no horn nor could be recall hearing any brake squeal.

The appellant was called and testified as an adverse witness on behalf of Mally. Her testimony was that on the evening in question she was driving her brother's 1960 Plymouth and that she was taking a nephew to the airport. She estimated her speed going south on Harrison Avenue at between 20 and 25 miles per hour. Concerning what happened just prior to the accident she testified as follows:

"Q. As you passed Moran's Trailer Court that particular

evening, you were later involved in a collision with Mr. Mally, isn't that right? A. Yes, sir.

"Q. And at some point there I think you saw Mr. Mally in front of you, did you not? A. Yes, sir.

"Q. How far would you say you were when you saw him? A. Very close. In fact, I couldn't tell you, but very close. The car was practically on top of him when I saw him because it is dark in that area.

"Q. But you were paying attention to the road in front of you; you were looking ahead, were you not? A. Yes, sir.

"Q. You weren't distracted by anything in the car? A. No, sir.

"Q. So that when you got to the point where your lights illuminated the road ahead of you and Mr. Mally appeared within that view, that's when you first saw him? A. Yes, sir * * *

"Q. When you first saw him it looked like he— A. Looking west.

"Q. —didn't see you? A. He may have seen me; that I couldn't say.

"Q. But at any rate, his head wasn't directed toward you? A. No.

"Q. As you saw him he appeared to be looking west. A. Yes.

"Q. And he was right there in the road ahead of you, right? A. Yes, sir.

"Q. And when you saw him did you honk the horn? A. I did not. I applied the brakes and swerved to the left.

"Q. But when you applied your brakes did you bring your car to a stop? A. No, not a complete stop.

"Q. When you applied the brakes did you dynamite them? A. I applied the brakes and if he didn't turn I would have avoided him. But he turned towards me and that's when—

"Q. You saw him in front of you? A. Yes.

"Q. You had him in your view while you were turning and applying the brakes. A. Yes, sir. * * *

"A. Well, I'll tell you, all I thought was if I stopped, came to a sudden stop there, cars behind me would plow into me. I had to be going to be off the highway.

"Q. So after you saw Mr. Mally, did you make a mental judgment there, you would not stop. A. Yes.

"Q. You were only going twenty, not very fast. A. Not very fast.

"Q. You could have stopped. A. If I wanted to, why certainly."

While considerable other testimony was produced during the course of the trial this testimony constitutes the meat of the appeal. Throughout the trial, respondent Mally admitted negligence but contends that under the last clear chance doctrine he should prevail. It should be noted, to understand the following discussion that this case was plead as a last clear chance doctrine case and while depositions were taken prior to trial the case immediately developed on trial to be an inattentive pedestrian case.

A careful examination of the evidence presented at the trial and a study of both counsel's briefs leads us to believe that throughout the trial and in the appeal that appellant failed to recognize the theory of respondent's case. Appellant contended from the outset respondent was negligent; that he assumed the risks involved in crossing the street; that he was guilty of contributory negligence; that in his jaywalking he violated a city ordinance; that all of this created a continuing and concurrent negligence all of which negates recovery from appellant even under the last clear chance doctrine. The respondent admits all of this but argues that in spite of his negligence that he clearly comes within the doctrine of last clear chance as enunciated by the case law of this court. Particularly does he rest his case on this doctrine in view of the testimony he elicited from the appellant when she appeared as an adverse witness to wit; she

saw him in her headlights about 100 feet ahead of her car, the fact he seemed to pay no attention to her oncoming car, and the fact she didn't try to stop nor did she blow her horn. With this testimony in, and apparently believed by the jury, the respondent's position became that regardless of his own negligence he could recover.

Commencing early in the century with the case of Neary v. Northern Pac. R. Co., 37 Mont. 461, 97 P. 944, 19 L.R.A., N.S., 446 (1908), to the more recent cases of Sorrels v. Ryan, 129 Mont. 29, 281 P.2d 1028, and Gustafson v. Northern Pac. Ry. Co., 137 Mont. 154, 351 P.2d 212, this court has recognized and developed the doctrine of last clear chance in Montana. Generally the cases under this doctrine fall into two classifications; (1) the helpless plaintiff, and (2) the inattentive plaintiff. These two situations are ably set forth and discussed in 2 Restatement of Torts 2d, §§ 479 and 480.

Under the facts of this case the plaintiff falls under the rules applicable under section 480 and the case law of this state which recognizes the position of an inattentive plaintiff who negligently places himself in a perilous position. Sorrels v. Ryan, supra. Recovery under this situation is much narrower than that of the helpless plaintiff for an inattentive plaintiff to recover it must be shown that the defendant knew of the plaintiff's perilous situation, or should have known, and failed to exercise care to avoid injuring the plaintiff. Clearly here under the facts before the jury they could reasonably have found that defendant some 100 feet away from plaintiff, driving at about 20 miles per hour who observed the plaintiff not paying any attention to her and who failed to either blow the horn or to stop her vehicle until after the accident could be found to be the proximate cause of the accident.

The appellant sets forth four specifications of error.

(1) Was defendant entitled to a judgment of dismissal pursuant to her motion for summary judgment under Rule 56,

M.R.Civ.P., on the basis of the pleadings and the depositions of the plaintiff and defendant and of the applicable law?

(2) Was defendant entitled to a directed verdict under Rule 50 or a judgment of dismissal under Rule 41(b), M.R.Civ.P., pursuant to the motion made at the end of plaintiff's case?

(3) Did the court err in giving instruction 17 and in refusing to give defendant's proposed instruction 12?

(4) Did the court err in denying defendant's motion for judgment notwithstanding the verdict pursuant to Rule 59, M.R.Civ.P.?

Concerning appellant's argument on being entitled to a summary judgment on the deposition, we find no merit. Where an appeal is taken from either the granting of a summary judgment, or the failure to grant a motion for summary judgment in negligence cases, this court will review the testimony in the most favorable aspect it will bear in support of plaintiff's claim of the right to present the merits of his case to the factfinder. Kober & Kyriss v. Stewart & Billings Deaconess Hospital, 148 Mont. 117, 417 P.2d 476; Johnson v. St. Patrick's Hospital, 148 Mont. 125, 417 P.2d 469.

In summary judgment, the burden is on the moving party to clearly establish that there is no factual issue to be determined, and the burden is not upon the opposing party to show a prima facie case. It is the function of the trial court to allow a plaintiff to present a case so that the actual occurrences might be determined, the character and import of the events analyzed, and having resolved these matters, to determine whether the defendant failed to exercise that degree of care and forethought which an ordinarily prudent person would have exercised in the fulfillment of the duty to protect the plaintiff from injury.

With respect to the use of summary judgment in a negligent action, 6 Moore, Federal Practice 2583, § 56.17[42], states the general proposition "that issues of negligence, including such related issues as wanton or contributory negligence,

are ordinarily not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner."

We are unable to agree with the appellant's contention under her second specification of error, that she was entitled to a dismissal of respondent's case at the end of his presentation of evidence under Rule 41(b), M.R.Civ.P.

A review of the evidence shows that the trial judge properly denied the giving of defendant's proposed instruction 12 and properly gave instruction 17. The question was not raised whether "she should have seen"; the testimony clearly shows she did see him and failed to exercise reasonable care to have prevented the injury.

Finally after a careful review of all the evidence presented we find no error in the district judge's denial of defendant's motion for a judgment notwithstanding the verdict pursuant to Rule 59, M.R.Civ.P.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE, ADAIR and CASTLES, concur.